## PRICE *v.* DEWEY.

*(Circuit Court, D. California.   August 30, 1880.)*

RES ADJUDICATA—LAW JUDGMENT—EQUITABLE RIGHTS.

Where, in an action at law, upon issues taken upon all the allegations of the complaint, a trial is had, and all the issues are found in favor of the defendants, and final judgment entered thereon, the matters so in issue found and adjudged are *res adjudicata,* and conclusive of the rights of the parties in a subsequent bill in equity, even if complainant commenced and tried the action before he discovered or obtained all the evidence establishing alleged fraudulent acts of the defendant.

In Equity.

*H. E. Highton,* for complainant.

*Doyle & Barber,* for defendant.

Sawyer, C. J. This is a bill in equity filed by Rodman M. Price against Squire P. Dewey, as the surviving partner of a former real estate firm, Payne & Dewey. It alleges, in substance, that there was a fraudulent conspiracy between Rodman M. Price's agents and Payne & Dewey (Dewey being the surviving partner) to transfer and get possession of a large amount of complainant's real property in San Francisco without any consideration; that no payments were in fact made; that although there was a check for some $60,000 given, it was only given temporarily, and until the parties could raise from the sale of the property sufficient money to pay the amount, and was but a nominal consideration. Complainant seeks an account from Mr. Dewey, as surviving partner, of the proceeds of the sales of that property.

The defendant files a plea in bar, in which it is in substance alleged that these same matters were set up in an action brought by Rodman M. Price against Payne & Dewey, and his said agents, Keyes and Scott, in the city of New York, in the year 1857, wherein he alleged the same facts; that the case was tried by a jury who found for the defendants; and that a judgment was rendered by the court giving effect to that verdict, which remains still unreversed and in full force, so that the matter has been already adjudged between the parties. It is insisted, on the other side, that the present bill shows a different state of facts from that set up in the New York suit, and this claim is supported on two theories, viz.: (1) That the accounts of the transactions were not closed until 1861, long after the commencement of the New York suit; and (2) that the lands conveyed to Payne & Dewey in pursuance of the conspiracy were conveyed without consideration, so that though an apparent title passed to the grantees, which enabled them to convey to purchasers, which they did, yet as between the complainant and the defendant, the title did not pass, and he is, therefore, entitled to an account of the proceeds.

I have compared the complaint in the action in New York with the bill in this case, and analyzed them carefully. In my judgment the cause of action set up in the New York complaint is the same as that alleged in the present bill. The latter consists merely of an amplification of the allegations of the former, with some additional circumstances and evidential facts. But the *gravamen* of the bill is precisely the same as that of the complaint in New York. It is contended that the New York suit having been at law, and this being a bill in equity, and the relief sought being different, there is no identity between them. But it makes no difference, if the exact facts have been determined and adjudged, whether it took place in an action at

law or a suit in equity.   If the facts were determined the determination was final.   It is *res adjudicata*, and conclusive.   Under the practice of New York, too, there is no distinction between law and equity proceedings.   All distinctions as to forms of actions are abolished.   If the party sets out the facts which constitute the cause of action, he is entitled to such relief as they justify, whether under the old system it would be an action at law or a suit in equity.

In the case in New York all the facts, which constituted this alleged fraudulent conspiracy of Payne & Dewey, were set out and distinctly averred, and if they were true, as stated in the complaint, they would have entitled the party to relief.   He did in fact seek damages.   He alleged that immediately after the transfer of the property enough of it was sold to realize $300,000.   It was alleged that the nominal consideration was $130,000 or $135,000, but that the defendants, Payne & Dewey, immediately sold enough to realize $300,000.   The plaintiff asked for judgment damages, it is true.   But he alleged that the property was worth half a million of dollars, and that he had sustained damages to that amount—the whole value of the property.   So, also, the facts alleged in that complaint justified an account.   All that was wanted was a mere change in the form of the prayer.   But even that was not necessary in New York, because the defendant appeared in the action and answered; and by a provision of the Code of Procedure of that state, when a defendant appears and answers, any relief may be granted that is properly embraced within the issues. The fact that the plaintiff chose to demand damages, instead of a decree for an account, does not affect the transaction.   If he had recovered it would have, undoubtedly, concluded the present action. The same result should follow in the contrary alternative.   The fact that the transactions were not closed until long after that suit was brought does not affect the question, because, if he is entitled to an account at all, it is an account of the proceeds of that property, and for the reason that the property was his.   If he had maintained his action at the time he brought it in New York, he would have been entitled to an account of the proceeds of the property already sold, if he had asked it, and a reconveyance of the unsold remainder. Or, if he preferred to recover damages, he would have recovered at least the full value of all the property lost by the acts complained of, so that the fact that sales were made by the parties fraudulently obtaining the title after the commencement of that suit does not affect the question.   He could have got full relief at that time.   As I look at it there could have been no verdict and judgment in favor of Payne

& Dewey at that time under the allegations of the complaint, and the issues made by the answer, without finding and adjudging the issue as to the fraudulent transfer of the property in their favor. That was the basis and *gravamen* of the action, and it is the same in this suit. In my judgment the plea sets up a good defence. Undoubtedly, the bill states an outrageous case, provided its allegations are true. If the plaintiff failed to introduce all his testimony in the New York case, or brought this action before he obtained all his testimony, that was either his mistake or misfortune. He was aware, or thought he was aware, of the fraudulent transactions, and chose to bring his action and rest upon the facts then known to him. He claims that he has discovered other facts since. They are all matters of public record, or public notoriety, and were such at that time. If he neglected his suit because he had other business which was more important, as seems from this bill to be the case, it was his misfortune or his choice. At all events the allegation is that these matters were set up and relief sought in that action. Issue was taken on them and the issues were found in favor of the defendants, and a judgment rendered on the finding of those issues.

That being so, whether the allegations are true or false, the matter has already been heard, determined, and adjudged according to the facts set up in this plea. The plea therefore, I think, is good, and must be sustained.