# THE SUPREME COURT

OF

# OREGON.

## MARCH TERM, 1889.

[Filed March 13, 1889.]

## J. S. HALL, RESPONDENT, *v.* ZELLER BROTHERS, APPELLANTS.

FORMER ADJUDICATION — ESTOPPEL. — Where a fact has been once litigated in a court of competent jurisdiction, the judgment rendered therein forever estops the parties and their privies from again litigating the same fact.

VERDICT. — In an action where there are numerous issues and a general verdict, it must be intended that the verdict is as comprehensive as the issues, and concludes every question of fact at issue.

ITS EFFECT. — Where some specific fact or question has been adjudicated or determined in a former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties, its determination in the former suit, if properly presented and relied on, will be held conclusive upon the parties in the latter suit, without regard to whether the cause of action is the same in both suits or not.

*Doud & McCoy*, for Respondent.

*Watson, Hume, & Watson*, for Appellant.

STRAHAN, J.—For his first cause of action, the plaintiff alleges that on the fourth day of March, 1887, plaintiff

and defendants entered into an agreement in writing, by the terms of which it was in substance agreed between said parties as follows: That the plaintiff was to furnish a mill-site, and to furnish logs to the same, for the sum of $2.75 per thousand feet, of good quality fir, such as the railroad company will accept for ties, and to the amount of six thousand feet per day, in all about eight hundred thousand feet. That defendants were to erect a saw-mill on said site, and to pay said price for the quality of timber above named. Payments to be made as the railroad company makes them on any sales that may be made, and when the above amount of lumber has been sawed, to quit, and deliver up the said premises in reasonable order, the mill to be moved away by the defendants, leaving the slabs that are not used on the premises. It is then alleged that the mill was erected on said premises under said contract, and plaintiff cut and furnished a considerable amount of timber, and delivered the same under said contract to the said defendants, and on the twenty-fifth day of October, 1887, the defendants having neglected and refused to pay plaintiff for so much of said timber so delivered which by the terms of said contract was at that time due, commenced an action against the defendants to collect the same in connection with several causes of action. That since said action was commenced against said defendants, they have sold fifty-four thousand feet more of the timber so delivered to them by the plaintiff under said contract, and that by the terms of said contract the same has become due and payable to the plaintiff at the rate of $2.75 per thousand feet, and defendants have neglected and refused to pay, etc. A second cause of action is for negligently and wantonly breaking down a *considerable portion* of plaintiff's fence, and for refusing to repair the same, to plaintiff's damage in the sum of twenty dollars. A third cause of action is for wantonly

and maliciously destroying about twenty cords of slabs, contrary to the terms of said contract, to plaintiff's damage in the sum of twenty dollars, and for selling ten cords of slabs, to plaintiff's damage in the sum of ten dollars.

The defendants demurred to the complaint upon several grounds, which being overruled, they filed their answer. By their answer the defendants deny that they have sold fifty-four thousand feet, or any greater amount than forty-six thousand feet, of the timber delivered to them by the plaintiff under said contract since the commencement of the former action mentioned in the complaint, and they deny that any other or greater sum than $126.50 is due now or ever was due the plaintiff thereon.

Each of the other causes of action are specifically denied. The answer then alleges, by way of counterclaim to the causes of action stated in the complaint, that over six thousand feet of logs delivered to them by plaintiff under the written contract set out in the complaint were not of good quality of fir, such as the railroad company would accept for ties, and were not of good quality fir, such as were fit or suitable for railroad ties, but were unsound and decayed, and that the lumber manufactured therefrom was unsalable at the ordinary rate; but that the defendants were compelled to sell the whole six thousand feet for the sum of twenty dollars, which was the highest price that could be procured for the same, and all it was reasonably worth. That the market value of good merchantable ties was eight dollars per thousand feet, and that said railroad company would have accepted said six thousand feet of ties, and paid that sum therefor, had the same been of suitable material. That said six thousand feet of lumber are contained in said forty-six thousand feet of lumber sold since the commencement of said previous action, and that by reason of said loss defendants have been damaged in the sum of twenty-eight dollars.

For a second counterclaim, the defendants allege, in substance, as follows: That on or about the 1st of March, 1887, they entered into an agreement with the plaintiff, wherein and whereby they promised and agreed to and with the plaintiff to furnish a steam saw-mill, and set the same up on the plaintiff's land, about ten miles distant from Portland, Oregon, and begin to run and operate said saw-mill on said land within a reasonable time from said date, and saw and manufacture at said mill all the lumber and timber at said place which he might require for a barn, fencing, and other improvements on his said land, and not less than seventy thousand feet, at the usual market prices therefor. And the plaintiff, in consideration of the promise and agreement of the defendants, did promise and agree to and with the defendants to take and receive from them at their said mill, and as soon as the same could be conveniently sawed and manufactured thereat, not less than seventy thousand feet of lumber and timber for said barn and other improvements on his said land, and pay the defendants the usual market price therefor; that in consideration of said promise and agreement on the part of the plaintiff, and in reliance thereon, the defendants did, at great expense, procure a steam saw-mill, and erect the same on the plaintiff's said land, and begin to work and operate the same according to said agreement, on or about the 1st of June, 1887; that thereafter and prior to April 1, 1888, at divers times, and whenever required by plaintiff, the defendants sawed and manufactured at their said saw-mill on said land large quantities of lumber and timber for the plaintiff for his said barn and other improvements thereon, and upon his orders therefor under said agreement, amounting altogether to eleven thousand feet, delivered by them to the plaintiff under said agreement, and accepted by him; and during said entire period defendants were able, ready, and willing

to saw and manufacture the remainder of said seventy thousand feet, namely, fifty-nine thousand feet, for the plaintiff, according to the terms of said agreement and repeatedly notified and requested the plaintiff to give them his orders therefor, which plaintiff wholly failed and neglected and refused to do, except said eleven thousand feet; and the plaintiff notified the defendants that he would not furnish any further orders or bills for lumber or timber, or receive any further quantity thereof, upon said agreement, and on or about said April 1, 1888, notified the defendants to quit and surrender up to him the possession of said mill-site and premises occupied by them, and threatened to commence an action to enforce their removal therefrom; that by reason of said notice and threat, they were compelled to and did, on or about said date, remove from said premises, and surrender possession thereof to the plaintiff. It is then alleged that by reason of said neglect, failure, and said other wrongful acts and misconduct of plaintiff, the defendants were hindered from further performing their said agreement, and were prevented from manufacturing said remainder of fifty-nine thousand feet of lumber and timber for the plaintiff, and were prevented from making the profit thereon, to their damage in the sum of $177; that the usual market price for lumber and timber to be furnished by the defendants to the plaintiff under said agreement was eight dollars per thousand feet, and for the eleven thousand feet received by plaintiff as aforesaid, the sum of eighty-eight dollars; and though often requested, plaintiff has failed and refused, and still does fail and refuse, to pay the same, etc.

The plaintiff, replying to the defendants' first counterclaim, pleads, by way of release and estoppel, that the defendant ought not to be admitted to allege that they had been damaged in the sum of twenty-eight dollars by plain-

tiff delivering to them over six thousand feet of logs which were so unsound as not to be suitable for railroad ties, etc.; because on or about October 1, 1887, plaintiff and defendants entered into a contract whereby the defendants, for a good and valid consideration, agreed to release plaintiff from the logging contract between them, and from all liability under the same; and after plaintiff had been released from said logging contract, and had ceased to deliver logs to the defendants under the same, plaintiff commenced an action on the twenty-fifth day of October, 1887, against the above-named defendants in said circuit court, to collect the amount then due plaintiff for furnishing and delivering logs under said contract to the defendants, and the defendants did set up as a defense and set-off to plaintiff's causes of action arising under said logging contract in said action a claim for recoupment for all damages they, the said defendants, had sustained through or by the fault or neglect of the plaintiff in performing said logging contract; that such damages were put in issue in the aforesaid action, and were fully considered and passed upon by the jury in their verdict, and that a judgment was duly rendered and given on said verdict, which remains in full force. The reply then contains denials of the first counterclaim. The reply to the second and third counterclaims is substantially the same as to the first. The jury found a verdict for the plaintiff for the sum of $148.50, upon which judgment was rendered, from which judgment this appeal is taken.

The notice of appeal contains numerous assignments of error, amongst which are error of the court in admitting the judgment roll No. 13,496 in the former action No. 7,862, between the same parties, as evidence before the jury, to estop the defendants from denying or disproving that the quantity of lumber on hand and unsold from the saw-logs delivered by plaintiff under the written contract

of March 4, 1887, at the time of the commencement of said former action, was only forty-six thousand feet, or any less quantity than fifty-four thousand feet, and in holding and ruling upon the trial that defendants were estopped thereby; error of the court in excluding the evidence offered to prove that the quantity of such logs was only forty-six thousand feet, and not fifty-four thousand feet; error on the part of the court in refusing to allow defendants to prove the contract in relation to their sawing lumber for plaintiff for barn and other improvements about his place.

The judgment roll in the former action was offered in evidence by the plaintiff. One of the allegations in the defendants' answer in the former action which is claimed to work an estoppel in this is as follows: "They admit that on March 4, 1887, they entered into the written contract with the plaintiff mentioned in the seventh cause of action in the complaint; and admit they were to pay the plaintiff $2.75 per thousand feet for furnishing the timber for, and cutting and hauling saw-logs to, their said steam saw-mill; but they allege that in and by said written contract it was expressly stipulated and agreed between the plaintiff and defendants that no sum of money for or on account of furnishing said saw-logs at their said steam saw-mill, under said written contract as aforesaid, should become due or payable to the plaintiff from the defendants until after they had sold the lumber or timber manufactured from said saw-logs, and collected the price thereof, and only as such sales should be made and the price received by them, and in the proportion to the amount thereof. And the defendants allege that the plaintiff delivered to them under said contract 165,000 feet of saw-logs and no more, but that only 109,930 feet of the lumber and timber manufactured by them from said saw-logs have been sold and the price thereof received

by them," etc.   This is perhaps enough of the answer in the former action, which it is claimed by the plaintiff creates the estoppel relied upon, to present the question. But in addition to the pleading, the court charged the jury upon the trial that the effect of such former record was to estop and preclude the defendants in this action from alleging or proving upon this trial what was the actual quantity of lumber on hand and unsold from the saw-logs delivered by plaintiff under the written contract of March 4, 1887, at the time said former action was commenced.

1. The first question demanding attention is, What was the effect of the judgment rendered in the previous litigation between the parties?   Having alleged in the former suit that they had on hand fifty-four thousand feet of lumber which remained unsold, are they thereby precluded from now alleging that the amount in fact was only forty-six thousand feet?   To support their contention, counsel for the respective parties have cited many authorities, which have been examined by the court; but they do not seem decisive of the question presented.   All concede that when a fact has been once litigated in a court of competent jurisdiction, the judgment rendered therein forever estops the parties and their privies from again litigating the same fact.   The rule is undisputed, but the difficulty lies in its application.   The matter now relied upon was pleaded in the former action for the purpose of reducing the plaintiff's recovery in that action.   For that purpose it was put in issue and tried.   It must be intended that the verdict of the jury covered all the issues made in that action.   The quantity of lumber which the defendants had on hand, and which had been sawed from timber delivered by the plaintiff under the written contract, was one of the issues, and I am unable to perceive why the judgment rendered does not conclude that ques-

tion in the same manner that every other issue of fact in the case is concluded. The effect of the authorities, I think, is, that the estoppel in such case is complete. (*Hanna* v. *Read,* 102 Ill. 596; *Tilley* v. *Bridges,* 105 Ill. 336; *Radford* v. *Folsom,* 3 Fed. Rep. 199; *Reynolds* v. *Babcock,* 60 Iowa, 289; *Heroman* v. *Louisiana Inst. of Deaf and Dumb,* 34 Iowa, 805; *Price* v. *Dewey,* 6 Saw. 493; *Goodnough* v. *Litchfield,* 59 Iowa, 226; *Vanlandingham* v. *Ryan,* 17 Ill. 25.)

In *Hanna* v. *Read, supra,* the principle is thus stated: "Where some specific fact or question has been adjudicated and determined in a former suit, and the same fact or question is again put in issue on a subsequent suit between the same parties, its determination in the former suit, if properly presented and relied on, will be held conclusive upon the parties in the latter suit, without regard to whether the cause of action is the same in both suits or not." Counsel for appellant, in effect, insist that there can be no estoppel in this case, for the reason that the answer in the former action presented a number of separate defenses, and the complaint therein contained a number of causes of action, so that the record lacks that degree of certainty necessary to create an estoppel.

In support of this objection they cite *Russell* v. *Pace,* 94 U. S. 606. But the principle of that case can have no application here. There is no uncertainty in the case before us what matters were litigated and determined in the former action. They are fully disclosed by the record.

In such case, says Herman on Estoppel and Res Judicata, volume 1, section 111: " The estoppel of a judgment covers the whole matter in dispute in the cause in which it is rendered, and to every point decided between the parties in the course of the proceedings which led to the judgment. The judgment itself operates as a bar, and the decision of a particular issue as an estoppel, but their conclusive

effect is the same, and depends upon the principle of *interest reipublicæ ut sit finis litum.* In order to make a judgment effectual as an estoppel, the cause of action must be substantially the same; it must be sustained by the same evidence, although the form of the action may be different. But the estoppel of an issue on a particular point, or of the judgment itself, as to the point which it decides, will be conclusive as to the points in any subsequent proceeding, whether founded on the same or a different cause of action." And section 247 of the same work says: "The estoppel of a judgment extends beyond what appears on its face; it includes every allegation made by the plaintiff and denied by the defendant; it extends to every fact in issue between the parties that was adjudicated in the action; and while it not only proves and establishes the case of the successful party, it denies and refutes that of the other." The only question presented on this appeal is as to the effect of the record in the former litigation between the parties, upon their right in the present action in the particular mentioned, and on that question I think the court did not err.

It would be unsafe to relax the well-established rule as to the effect of judicial records. Rights of property and the repose of society depend upon them, and the safer and better rule, as well as the sounder policy, requires that the same should be adhered to. These views lead to an affirmance of the judgment.

THAYER, C. J., concurred; LORD, J., expressed no opinion.