Submitted on briefs October 29, affirmed November 13, 1917.

# HERRETT v. THE WARMSPRINGS IRRIGATION DISTRICT.

### (168 Pac. 609.)

**Waters and Watercourses—Irrigation District—Petition for Organization—"Owners of Land."**

1.   Under Sections 6167, 6168, L. O. L., as amended by Laws of 1915, Chapter 189, page 234, authorizing 50, or a majority, of the holders of title to lands susceptible of irrigation from a common source to propose the organization of an irrigation district, and providing that at the election on the question of organizing such district any person who is a *bona fide* owner of land situated in the district shall be entitled to vote, and that a *bona fide* claimant to an incomplete title under the public land laws of the United States or the state shall be construed to be a *bona fide* owner within the meaning of that act, only holders of title to land susceptible of irrigation within the proposed district are competent as signers of the petition for the organization of the district.

**Waters and Watercourses—Irrigation District—Petition for Organization—"Owners of Land"—"Holders of Title to Land."**

2.   Under Section 6167, L. O. L., as amended by Laws of 1915, Chapter 189, page 234, authorizing the holders of title to land within the boundaries of a proposed irrigation district to petition for the organization of such a district, and Section 6168, as amended by the same act, providing that on final hearing on the petition the court shall make and enter an order determining whether the requisite number of owners of land within the district have petitioned for the formation thereof, a petition reciting that the petitioners were "owners of land" within the boundaries of the proposed district was sufficient to invoke an exercise of the court's jurisdiction, as, in Section 6168, the legislative assembly uses the term "owners of land" as synonymous with the phrase "holders of title to land."

  [As to petitioner for organization of irrigation district as freeholder, see note in Ann. Cas. 1913D, 335.]

**Waters and Watercourses—Irrigation Districts—Proceeding for Organization.**

3.   By the publication of a petition for the organization of an irrigation district in five separate issues of a weekly newspaper printed

in the county, the County Court secured jurisdiction of all persons interested in the proposed district.

**Waters and Watercourses—Irrigation District—Petition for Organization.**

4. A petition for the organization of an irrigation district, stating that the petitioners being desirous of forming irrigation district embracing land thereinafter designated within boundaries thereinafter described to utilize the waters of a river for the purpose of irrigation, thereby petitioned, etc., showed by reasonable intendment that the lands in the proposed district were susceptible of irrigation from such river as a common source, within Section 6167, L. O. L., as amended by Laws of 1915, page 234.

**Statutes—Pleading—Judicial Notice.**

5. Under Section 729, subdivision 3, L. O. L., requiring judicial notice to be taken of all public and private official acts of the legislative department of the state, it was not necessary for a petition for the organization of an irrigation district to specify all or any of the statutes governing the organization of such a district, as the court was bound to take judicial notice of all such acts.

**Waters and Watercourses—Organization of Irrigation Districts—Conclusiveness of Order.**

6. Under Section 6168, L. O. L., as amended by Laws of 1915, Chapter 189, page 234, providing that on the final hearing on a petition to organize an irrigation district, the court shall make and enter an order determining whether the requisite number of owners of land have petitioned for the formation of the district, and whether the petition and notice of the time of its presentation have been duly published, and that such order shall be conclusive evidence of the facts found by the court, an order determining that the requisite number of owners had petitioned for the formation of the district, and that the petition and notice had been duly published, and that a satisfactory bond to indemnify the county against the cost of organizing the district had been given, was conclusive that the bond was sufficient.

**Judgment—Conclusiveness—Special Proceedings.**

7. Under Section 6213, subdivision 29, L. O. L., as amended by Laws of 1911, Chapter 223, page 378, providing that the board of directors of an irrigation district may by petition commence proceedings in the Circuit Court for the purpose of having a judicial examination and judgment as to the regularity and legality of its proceedings providing for the issue and sale of the bonds of the district, where notice of such a special proceeding was duly issued and served as prescribed by law, and no demurrer, answer or other pleading having been interposed or objection made, a decree was entered adjudging the district duly organized, and adjudging that everything had been done to authorize the issue of bonds and that when issued they would be legal and valid obligations of the district, and the time for appealing from such decree had expired without any appeal being taken, the decree was final and *res adjudicata* against a property owner and all other persons interested in or affected by the issuance or sale of such bonds.

From Malheur; DALTON BIGGS, Judge,

In Banc.   Statement by MR. JUSTICE MOORE.

This is a suit by Vernon T. Herrett, a resident and owner in fee of real property situate within certain boundaries in Malheur County, Oregon, against the Warmsprings Irrigation District, an alleged pretended corporation, George McLaughlin, R. E. Weant, J. H. Russell, C. W. Mallett, and Rex Marquis, as its feigned directors, and John Rigby, and F. M. Vines, as its simulated secretary and treasurer, respectively, to have it decreed that the proposed district is not legally organized and is without authority to impose taxes upon real property therein, to issue or sell the bonds thereof, or to do any act that may impose a burden upon plaintiff's lands, and to enjoin the defendants from further proceeding as a corporation and from attempting to issue or sell any bonds.   The complaint sets forth those parts of the proceedings undertaken to organize the district which it is alleged rendered the attempted forming of the corporation invalid.

The answer denies the material averments of the complaint, and as a separate defense details all the proceedings whereby it is asserted the district was organized, its officers were elected, and the issuance of bonds in the sum of $750,000 was voted.   As a further defense and in bar of the maintenance of this suit it is substantially alleged that, on September 13, 1916, the defendants, the board of directors of the corporation, filed in the Circuit Court of the State of Oregon for Malheur County an initiatory pleading in order to obtain a determination of the regularity of the organization of the district and of the validity of the bonds so voted; that a summons therein was duly issued and legally served, requiring all interested persons to appear in that court at a time stated; that no demurrer, answer, other pleading, or objection of any

kind therein was ever made or filed; that the court considering the entire proceedings, copies of which were made a part of the initiatory pleading, decreed November 6, 1916, that the Warmsprings Irrigation District had been duly and regularly organized as a corporation, and that the bonds so voted were first obligations of the district and should be issued; and that more than 60 days from the making of the decree having elapsed without an appeal having been taken such final determination has become *res adjudicata* as to the plaintiff herein and to all other interested persons.

The reply denied the averments of new matter in the answer, and this cause having been tried findings of fact and conclusions of law were made and filed, based upon which the suit was dismissed, and the plaintiff appeals.                              AFFIRMED.

For appellant there was a brief over the name of *Messrs. Hurley & Hurley.*

For respondents there was a brief over the name of *Messrs. Davis & Kest.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is contended that the petition designed to inaugurate the proceedings for the organization of the Warmsprings Irrigation District was insufficient for that purpose, by reason whereof the County Court of Malheur County, Oregon, never obtained jurisdiction of the subject matter, and that such being the case an error was committed in dismissing this suit, notwithstanding the statute declares that the order of the County Court determining certain essential particu-

lars "shall be conclusive evidence of the facts found by the court" (Section 6168, L. O. L., as amended by Chapter 189, Gen. Laws Or. 1915), which clause was in force when these proceedings were instituted. The enactment, however, relating to irrigation districts has been repealed and another statute substituted in lieu thereof by Chapter 357, Gen. Laws Or. 1917. Section 6167, L. O. L., as amended by Chapter 189, Gen. Laws Or. 1915, declares:

"Whenever fifty, or a majority of the holders of title to lands susceptible of irrigation from a common source or combined sources and by the same system or combined systems of works desire to provide for the irrigation of the same, they may propose the organization of an irrigation district under the provisions of this act."

Section 6168, L. O. L., as thus amended reads in part:

"For the purpose of organizing an irrigation district as provided by this act a petition signed by the required number of holders of title to the lands within the boundaries of such proposed irrigation district, shall be presented to the County Court of the county in which the land, or the greatest portion thereof, is situated; said petition shall set forth and particularly describe the boundaries of the proposed irrigation district, and shall state that it is the purpose of the petitioners to organize an irrigation district under the provisions of this act, and shall pray that the same be organized hereunder."

The petition initiating the proceedings to organize the Warmsprings Irrigation District was filed with the county clerk of Malheur County, March 2, 1916. It was addressed to the County Court of that county and reads in part:

"We, the undersigned citizens of the United States, owners of land within the boundaries as hereinafter

described, or who are *bona fide* claimants to unoccupied land under the laws of the United States, or of the State of Oregon, all being duly qualified electors under the law of the State of Oregon for organizing irrigation districts, being desirous of forming an irrigation district embracing land hereinafter designated within boundaries hereinafter described and set forth, utilizing the waters of the Malheur River for the purposes of irrigation, hereby petition your honorable court as follows: That, under and by virtue of the Irrigation District Law of Oregon, as recited in Chapter 7 of Lord's Oregon Laws, and as amended by Chapter 223, Laws of Oregon for 1911, and also as amended by Chapters 17 and 197, Laws of Oregon for 1913, and also as amended by Chapter 189, Laws of Oregon for 1915, providing for the organization and management of irrigation districts, your honorable court do proclaim a district as set forth herein, designating the name of said district and dividing said district into five subdistricts and defining the boundaries thereof; that your honorable court proceed with such dispatch as may be under said law to call an election for the purposes above set forth and do all things necessary under said law for the formation of said district, designating the time and places for voting at said election, and that the boundaries and description of land under said district shall be as follows, to wit''

—giving the courses and distances of the proposed district from and to the beginning point. There was excepted from the described area, however, the land included within the boundaries of the municipality of Vale, as recorded in the office of the County Clerk of Malheur County, together with other specified lands. The names of 82 persons were subscribed to the petition. There was also filed on March 2, 1916, a bond in the sum of $500, in which Malheur County was designated as the obligee and it was conditioned that if the 14 obligors whose names were subscribed thereto should well and truly pay all costs that might be in-

curred by the county in case the organization of the district was not consummated, the obligation was to be void, or otherwise to be in full force and effect, which undertaking was duly approved. Under the caption in bold-face type, ''To be presented to the County Court of Malheur County on the 5th day of April, 1916,'' the entire petition was published in the ''Malheur Enterprise,'' a weekly newspaper printed and published in that county, once each week for more than four successive weeks prior to the time so specified at which the petition was to be presented, commencing with the issue of March 4, 1916, and ending with that of April 1st of that year, proof of which was duly made by the affidavit of the foreman of the publisher of that paper and filed April 5, 1916. The petition, the affidavit of the foreman of the printer attached to a copy thereof, and the undertaking referred to were presented April 5, 1916, to the County Court, which by order duly made and entered appointed the 15th of that month at the courthouse in Vale as the time and place when and where should be heard any protests against and arguments in favor of organizing the proposed district, and all persons interested therein were notified by such order to be present at the time so designated. The court convened at the time and place specified and made and entered in its journal an order as follows:

''In the matter of organizing an irrigation district: The County Court of Malheur County having set April 15, A. D. 1916, for the purpose of hearing argument, suggestion, protest, and petitions regarding the organization of an irrigation district utilizing the waters of the Malheur River, after listening to a large number of owners and *bona fide* claimants of government land, whose acreage can be watered from said proposed system and which is within the boundaries of said pro-

posed district, having carefully investigated and considered and having ascertained that in accordance with the laws of Oregon made and provided for the organization of irrigation districts. The petition presented on April 5 contained the requisite number of signers owning land under said proposed district, and that said land can be irrigated by said water; that said petition had been published for four consecutive weeks prior to such presentment; that said petition upon presentment was accompanied with a satisfactory bond for five hundred dollars, indemnifying Malheur County against loss in conducting said election. Now, therefore, the County Court of Malheur County, proclaims, ordains, and orders: The name of the proposed irrigation district shall be, 'The Warmsprings Irrigation District.' Said district shall be divided into five subdivisions as follows''—giving the boundaries of each.

It was further ordered that an election should be held in the entire territory described May 27, 1916, to determine whether or not the district should be organized, at which election one director should be chosen in each of the five subdivisions and a treasurer for the district at large. The county clerk was ordered to prepare ballots and to secure stationery for such election, notice of which and of the boundaries so specified should be published in the "Malheur Enterprise" for four consecutive weeks, being in the issues of that newspaper beginning April 22, 1916, and ending with the publication of May 20th following. Judges and clerks of the election were appointed for each subdivision and duly notified of their selection. The county clerk caused to be posted in the several subdivisions of the district notices of the election, having written thereon the number of the subdivision for which each was designed and the polling place therein. Notice of the election was also published for the time demanded in the newspaper designated and proof thereof

was made by the affidavit of the printer. By nominating petitions T. W. Hadley was designated as the candidate for treasurer of the district at large, George McLaughlin as director for subdivision No. 1, R. E. Weant for No. 2, James Harvey for No. 3, C. W. Mallett for No. 4, and A. W. Trow for No. 5, to be voted for at the election. Official ballots were printed and delivered to the judges and clerks of the election in the several subdivisions. These ballots contained the information that an election was to be held in the proposed district Saturday, May 27, 1916, and the direction, "Mark a cross (×) between the number and the name of candidate or measure voted for." After the command "Vote for one" appeared the numeral 12 and the name of the person nominated for director for a particular subdivision, and also the numeral 14 and the name of the nominee for treasurer at large. Below each name was a line making a blank space in which might have been written the name of some other candidate for each of these offices. The following inquiry and order were also printed upon the ballot: "Shall the Warmsprings Irrigation District be organized? Vote yes or no." Blank spaces were respectively marked "300 yes" and "301 no." A sufficient number of official and colored sample ballots were furnished for the use of all electors in each subdivision.

The election was held in the several subdivisions at the time appointed, and the returns thereof having been made and duly canvassed it was found that each person so nominated had been elected, and that the total vote in the district was 84 in favor of organization and 11 against it. Based upon such report and the investigation thereof the County Court on May 29, 1916, by an order duly made, declared that the persons so nominated were severally elected and proclaimed

that the Warmsprings Irrigation District was duly and legally created, redescribing the boundaries thereof and the exemption of certain lands therefrom as hereinbefore stated. The county clerk was also commanded to notify the persons so elected and to enter the entire order in the proper records of the county. The directors and treasurer so selected severally qualified, and each gave the required bond for the faithful performance of his duties, which undertakings were duly approved. The board of directors of the district met pursuant to notice June 7, 1916, and organized by electing James Harvey as president and by resolution duly appointed John Rigby as secretary. At a special meeting of the board of directors of the Warmsprings Irrigation District, held July 18, 1916, pursuant to notice which was mailed to and received by each number, only four of whom attended, it was regularly proposed that the district issue and dispose of gold bonds in the sum of $750,000, bearing 6 per cent interest per annum, payable semi-annually, specifying the denomination of the several bonds to be put forth and the length of time each should run. For the purpose of securing authority to issue such municipal obligations the board of directors duly ordered that an election should be held in the district on Tuesday, August 15, 1916, and the secretary was directed to prepare notices thereof. Polling places were designated and judges and clerks of such election were appointed. The notice calling a special election to be held in the several subdivisions at the time designated, to determine by vote of the electors whether or not the proposed bonds should be issued, and containing much information in relation to the irrigation of lands in the district and other matters, was published in the "Malheur Enterprise," as appears by the affidavit

of the foreman of the printer of that newspaper in four issues thereof, commencing with that of July 22, 1916, and ending with that of the 12th of the next month.  It also appears by the affidavit of the secretary of the corporation, that on or before July 22, 1916, he caused to be posted three copies of such notice in public places in each of the five subdivisions, and also a copy at the place of meeting of the board of directors at Vale in that county.  Ballots were printed for each subdivision, stating when and for what purpose the election would be held, directing the electors how to vote, and containing the words, "Bonds, yes," and in a space below, "Bonds, no."

The election was held in the several subdivisions at the time appointed, and, as appears by a canvass made by the board August 21, 1916, a total vote of 86 was cast in favor of issuing bonds and 23 against the proposition.   Within 30 days from the time such election was held the board of directors of the Warmsprings Irrigation District, invoking the benefits afforded by Section 6213, of subdivision 29, L. O. L., as amended by Chapter 223, Laws Or. 1911, commenced a special proceeding in the Circuit Court of the State of Oregon for Malheur County, for the purpose of obtaining a judicial examination and determination as to the regularity and legality of the proceedings of such board, providing for, and authorizing the issue and sale of the bonds of such district as voted by the electors thereof.   That court on September 13, 1916, by an order duly made and entered, directed that such proceedings should be heard at the courthouse at Vale, on October 24th of that year, at 9 o'clock A. M., or as soon thereafter as counsel could be heard, and commanded that notice thereof should be given by publication in the "Malheur Enterprise,"

and that on the day so appointed or at any time prior
thereto, any person interested in the proceedings
might appear, demur, answer, or otherwise plead
therein. Notice in the nature of a summons, running
in the name of the State of Oregon, was issued by
counsel for the petitioners, addressed to the Warm-
springs Irrigation District, a corporation, and to
all freeholders, legal voters, and assessment-payers
therein, informing them of the commencement of such
special proceedings and of the purpose thereof, noti-
fying them of the order for service by publication and
of the time thereof, and requiring them to appear at
the place designated on or prior to the expiration of
the time so limited to demur, answer, or otherwise
plead to the petition. This notice, as appears by the
affidavit of the foreman of the printer of the "Mal-
heur Enterprise," was published in that newspaper
for four weekly insertions, beginning with the issue
of September 16, 1916, and ending with that of the
7th of the succeeding month. At the time so ap-
pointed, the court being otherwise occupied, the
hearing of the special proceeding was postponed to
October 30, 1916, and no person having appeared,
answered, demurred, or made any objection thereto,
findings of fact were made, the substance of which
has been hereinbefore detailed, and conclusions of law
compatible therewith; and based thereon it was decreed
that each and every of the acts and things neces-
sary to the legal and valid organization of the Warm-
springs Irrigation District had been duly and regu-
larly done and performed; that each and every of the
acts and things necessary and proper for the board
of directors of the district to do or perform under
the provisions of law with reference to the election
held to authorize the issue of the bonds of the district

had been duly discharged; that the election and each and every act and thing with reference thereto had been duly, regularly, and legally performed, and each and every act thereof had been duly examined and the same was thereby approved and confirmed. It was further decreed that upon the execution, sale, and delivery of the bonds in their entirety or any part thereof, the same should be legal and valid first obligations of such corporation. No appeal was ever taken from that decree, and more than four months from the expiration of the time limited therefor having elapsed, this suit, somewhat in the nature of *quo warranto* proceedings, was instituted, and terminated as hereinbefore stated.

Section 6167, L. O. L., as amended by Chapter 189, Gen. Laws Or. 1915, provides that a petition to organize an irrigation district must be signed by a requisite number of

"the holders of title to lands susceptible of irrigation from a common source."

It will also be kept in mind that the petition filed with the county clerk of Malheur County March 2, 1916, stated that the subscribers thereto were

"owners of land within the boundaries as hereinafter described, or who are *bona fide* claimants to unoccupied land under the laws of the United States or of the State of Oregon."

It is argued by plaintiff's counsel that the failure to state in the petition that the persons signing it "were holders of title to lands," etc., within the proposed district, rendered such application insufficient to confer jurisdiction of the subject matter upon the County Court, and that its assumption of power to hear and determine the cause was unwarranted, and its order

was incapable of being validated by the provisions of the statute declaring that the declaration of that tribunal "shall be conclusive evidence of the facts found by the court": Section 6168, L. O. L., as amended by Chap. 189, Gen. Laws Or. 1915.

Jurisdiction of a County Court over the subject matter of the organization of an irrigation district was conferred by an act of the legislative assembly, approved February 20, 1895, Laws Or. 1895, p. 13. That enactment proclaims the manner of invoking an exercise of such power to hear and determine the proceedings to be by a petition signed by fifty, or a majority of the holders of title to lands within the boundaries of the proposed district, which premises are susceptible to irrigation from a common source: Sections 6167, 6168, L. O. L., as amended by Chap. 189, Gen. Laws Or. 1915. That part of Section 6168, L. O. L., prescribing the qualifications of persons who are entitled to vote at an election called to determine whether or not a proposed irrigation district shall be organized, reads:

"Any person, male, or female, of the age of twenty-one years or over, whether a resident of the district or not, who is a *bona fide* owner of land situated in the district, as shown by the last assessment-roll shall be entitled to vote at any election held under the provisions of this act; *provided,* that a *bona fide* claimant to an uncompleted title under the public land laws of the United States or of the State of Oregon shall be construed to be a *bona fide* owner of lands within the meaning of this act; *provided, further,* that the vote of any corporation holding title to land within the district may be cast by said corporation as a single land owner through any officer or agent of said corporation authorized by resolution by its board of directors."

It will thus be seen that qualified petitioners must be the holders of title to lands, while voters at an elec-

tion called to determine whether or not the proposed irrigation district shall be organized as a corporation may include a much larger class of persons.

1. It will be remembered that the petition inaugurating the proceedings to organize the proposed irrigation district stated that it was signed by both classes of such persons, if "a *bona fide* claimant to an uncompleted title under the public land laws of the United States or of the State of Oregon" can be denominated as such claimant "to unoccupied land" of that class as stated in the petition. But however this may be, none but holders of title to land susceptible to irrigation within the proposed district were competent petitioners.

2. The authority of a court to hear and determine a cause depends upon the averments of fact set forth in the initiatory pleading, invoking an exercise of jurisdiction: *Eagle Cliff Fishing Co.* v. *McGowan,* 70 Or. 1 (137 Pac. 766). "We, the undersigned * * owners of land within the boundaries hereinafter described," as stated in the petition, though not a positive averment that the signers were such owners, but rather a recital thereof, was undoubtedly sufficient, in the absence of any objection thereto, to invoke an exercise of the County Court's jurisdiction, if the phrase "owners of land" is equivalent to the term the "holders of titles to lands" as provided by the statute. In prescribing the procedure to be pursued by a County Court, when a petition to organize an irrigation district is ultimately presented for consideration, Section 6168, L. O. L., as amended by Chapter 189, Gen. Laws Or. 1915, reads in part:

"On the final hearing the court shall make and enter an order determining whether the requisite number of

owners of the land within such proposed district shall
have petitioned for the formation thereof."

It will thus be observed that the legislative assembly
used the term "owners of land" in another provision
of the statute, which was enacted at the same time and
as a part thereof, as synonymous with the phrase, "the
holders of title to lands." These phrases having been
thus employed, it is unnecessary to refer to decisions
of courts of last resort construing them in the same
manner. The petition, therefore, stated facts suffi-
cient to invoke an exercise of the jurisdiction of the
County Court.

3. As stated the petition was published in five sepa-
rate issues of a newspaper printed in Malheur County,
according to the proper proof thereof. By this means
the County Court secured jurisdiction of all persons
who might be interested in the proposed irrigation dis-
trict, and having obtained jurisdiction of the subject
matter by the filing and presentation of a proper peti-
tion on the final hearing thereof an order was made as
hereinbefore set forth.

4. It is maintained that the petition was insufficient
because it did not state that the lands included in the
proposed district were susceptible to irrigation from
a common source, etc., as specified in Section 6167,
L. O. L., as amended by Chapter 189, Gen. Laws Or.
1915. The petition states that the subscribers thereto
"being desirous of forming an irrigation district em-
bracing land hereinafter designated within boundaries
hereinafter described and set forth, utilizing the
waters of the Malheur River for the purposes of irri-
gation, hereby petition," etc.

By reasonable intendment it is apparent that the
lands referred to were susceptible of irrigation from

the Malheur River as a common source, and hence the petition is sufficient in this particular.

5. It is insisted that the petition was insufficient because reference was not made therein to all the statutes governing the matter. The County Court was obliged to take judicial notice of all acts of the legislative assembly applicable to the organization of irrigation districts within an exercise of the jurisdiction of that tribunal: Section 729, subd. 3, L. O. L. If, therefore, no reference whatever had been made to the statutes governing the procedure in such cases, the petition would have been adequate in that respect.

6. It is argued that the bond for the payment of $500, which accompanied the petition, was insufficient in amount, and for that reason the County Court erred in approving it. This question will not be considered, for the County Court, which had secured jurisdiction of the subject matter and of the persons who might be interested in or affected by the organization of the irrigation district, made at the final hearing, when such persons were afforded a day in court, and caused to be entered an order as hereinbefore set forth, determining that the requisite number of owners of the land within such proposed district had petitioned for the formation thereof, that the petition and notice of the time of presentation of the same had been duly published, and that a satisfactory bond had been given by the petitioners. Such order afforded as declared by the statute conclusive evidence of the facts so found by the court: Section 6168, L. O. L., as amended by Chap. 189, Gen. Laws Or. 1915; *Links* v. *Anderson*, decided simultaneously herewith. We conclude, therefore, that the Warmsprings Irrigation District is a legally organized corporation, constituting a municipal subdivision of the state, and that the board of

directors, secretary, and treasurer, the other defendants herein, are the duly elected or appointed and legally qualified officers thereof, and as such are competent to transact any and all business in which the corporation may legally engage.

7. The remaining question to be considered is the effect of the decree rendered by the Circuit Court of the State of Oregon for Malheur County determining the regularity and legality of the proceedings of the board of directors of the Warmsprings Irrigation District, providing for and authorizing the issue and sale of the bonds of such district to the amount of $750,000, in a special proceeding duly instituted for that purpose pursuant to the provisions of Section 6213, subdivision 29, L. O. L., as amended by Chap. 223, Gen. Laws Or. 1911. It will be kept in mind that notice of that special proceeding, which is analogous to a summons issued in a suit to quiet title, was duly issued and served in the manner and for the time prescribed by law; that no demurrer, answer, or other pleading was interposed to the petition filed therein, nor was any objection made to the granting of the relief prayed for; and that the time for taking an appeal from that decree had expired, without exercising the right, before this suit was instituted. Under the facts so stated and admitted the decree had become final and *res adjudicata,* as alleged in the answer herein, against the plaintiff and any and all other persons who are or might be interested in or affected by the issuance or sale of the bonds of the district so voted to be put forth: *Neil* v. *Tolman,* 12 Or. 289 (7 Pac. 103); *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442); *Hall* v. *Zeller,* 17 Or. 381 (21 Pac. 192); *White* v. *Ladd,* 41 Or. 324 (68 Pac. 739, 93 Am. St. Rep. 732); *Hoover* v. *King,* 43 Or. 281 (72 Pac. 880, 99 Am. St. Rep. 754, 65 L. R. A. 790);

*Taylor* v. *Taylor,* 54 Or. 560 (103 Pac. 524) ; *Weather-ford* v. *McKay,* 59 Or. 558 (117 Pac. 969) ; *Colgan* v. *Farmers' etc. Bank,* 69 Or. 357 (138 Pac. 1070) ; *Paulson* v. *Oregon Surety etc. Co.,* 70 Or. 175 (138 Pac. 838) ; *Crow* v. *Abraham, ante,* p. 99 (167 Pac. 590).

It follows from these considerations that the decree rendered herein is affirmed.   AFFIRMED.