**KIRBY LUMBER CORP. v. SCOFIELD,**
Collector of Internal Revenue.
Civil Action No. 1266.

United States District Court
W. D. Texas, San Antonio Division.
Feb. 7, 1950.

Ben H. Powell, Austin, Tex., and Fountain, Cox & Gaines, Houston, Tex., for plaintiff.

H. W. Moursund, United States Attorney, San Antonio, Texas, and Lester L. Gibson, Assistant to the Attorney General, for defendant.

RICE, District Judge.

### Findings of Fact

1. This is an action against Defendant for Thirty-Six Thousand Two Hundred Sixty-Six Dollars and Forty-Six Cents ($36,266.46) collected by him from plaintiff as for taxes and interest claimed to be due the United States of America, with interest, and arises under Section 117 (j) (2) of Title 26 United States Code Annotated.

2. Plaintiff (herein called "Kirby") is a Delaware Corporation, successor, after Bankruptcy Section 77B proceedings concluded in 1936, to the property and business of Kirby Lumber Company, a Texas corporation chartered in 1901. It is authorized, by its permit to do business in Texas, to manufacture and sell timber products and to buy and lease properties and facilities necessary to this purpose.

3. Frank Scofield, at all times material and at all times hereinafter mentioned, was, and is now, the duly appointed, qualified and acting United States Collector of Internal Revenue for the First District of the State of Texas.

4. Plaintiff has been since 1936, in the business of manufacturing and selling lumber and other timber products. It operates five sawmills in East Texas, and owns timber-lands and growing timber as a source of raw materials for its operations. It also owns houses for the use of its employees, and mules and trucks which it uses in its operations. Its executive offices and sales and accounting forces are in Houston, Texas. One Superintendent is over all mills. The Company also has a Tie Department. The Company owns more than a half-million acres of land and timber rights. Its timber lands, timber, houses, mules and trucks are, and have been, at all times herein mentioned, all used in connection with Plaintiff's business of building and maintaining a timber reserve and converting timber to lumber and other manufactured products for sale.

5. During the years 1942 and 1943, Plaintiff sold certain of its properties described in Paragraph 4, all held for a period of more than six (6) months prior to sale, and from said sales derived profits, which it returned as capital gain, in its income tax returns for the calendar years 1942 and 1943, respectively, under the provisions of Section 117(j) of Title 26, United States Code Annotated. Thereafter, the Treasury Department of the United States through the Commissioner of Internal Revenue and persons acting for him issued proposed deficiency notice for 1942 and 1943, proposing deficiency assessments in the sums of Seventeen Thousand Four Hundred Forty-Three Dollars and Forty Cents ($17,443.40) for 1942, and Sixteen Thousand Four Dollars and Twenty Cents ($16,004.20) for the year 1943, proposing among other things to deny capital gains treatment to said profits and to treat them as ordinary income; whereupon Plaintiff filed with the Commissioner of Internal Revenue protests against said proposed deficiencies, respectively; but said Commissioner issued ninety (90) day deficiency notices for said years in said

sums respectively, determining that One Hundred Ten Thousand Nine Hundred Twenty-Seven Dollars and Forty-Nine Cents ($110,927.49) received by plaintiff in the year 1942, and Eighty-Five Thousand One Hundred Eighty-Five Dollars and Seventy-One Cents ($85,185.71) received by Plaintiff in the year 1943, as profits from the sale of certain of its assets in such years, respectively, described in Paragraph 4, should be denied capital gain treatment under Section 117(j) of Title 26, United States Code Annotated, and should be taxed as ordinary income. Said action of the Commissioner of Internal Revenue resulted in increasing the taxes demanded of Plaintiff by the sum of Sixteen Thousand Six Hundred Thirty-Nine Dollars and Twelve Cents ($16,639.12) for 1942 and Twelve Thousand Seven Hundred Seventy-Seven Dollars and Eighty-Six Cents ($12,777.86) for 1943. The details of the transaction herein involved are as follows:

### YEAR 1942

|  | Feet | Cost | Sales Price | Gain |
|---|---|---|---|---|
| Standing Timber Sales | 9,948,615 | $40,960.73 | $144,607.78 | $103,647.05 |
|  | Acres |  |  |  |
| Timber Land Sales | 5,190.43 | 17,022.64 | 24,303.08 | 7,280.44 |
|  |  |  |  | $110,927.49 |

|  |  |
|---|---|
| Tax assessed by the Government—40% | 44,370.99 |
| As should have been assessed   —25% | 27,731.87 |
| Over Assessment | $ 16,639.12 |

### YEAR 1943

|  | Feet | Cost | Sales Price | Gain |
|---|---|---|---|---|
| Standing Timber Sales | 7,585,753 | $31,570.55 | $113,140.08 | $ 81,569.53 |
|  | Acres |  |  |  |
| Timber Land Sales | 3,422.65 | 11,223.42 | 14,002.90 | 2,779.48 |
|  |  |  |  | $ 84,349.01 |

### DEPRECIATION

| | | | | |
|---|---|---|---|---|
| 25 Tenant Houses | 4,669.26 | 5,609.40 | 1,895.00 | 954.86 |
| 1 Log Truck | 21.84 | 1,200.00 | 1,000.00 | (red) 178.16 |
| 4 Mules | ....... | 840.00 | 900.00 | 60.00 |
|  |  |  |  | $ 85,185.71 |

|  |  |
|---|---|
| Tax assessed by the Government—40% | 34,074.28 |
| As should have been assessed   —25% | 21,296.42 |
| Over Assessment | $ 12,777.86 |

6. Kirby's policy has been to discourage and seek to avoid sales of land and timber, as distinguished from sale of manufactured products. It has no sales force for sale of land or timber, does not advertise its lands or timber for sale, and has never solicited a sale thereof.

Its regular customers are wholesale lumber firms, retail yards, railroads and industries. These are customers for sales of manufactured products. The larger sales of timber and land in question in 1942 and 1943 were to competitors. Land and timber sales were by deeds, and sales of timber for posts and piling were by an arrangement under which invoices were rendered to purchaser as purchaser cut and removed the agreed timber. The purchasers of the standing timber cut it and Kirby received the price and had nothing further to do with the timber, and its further manufacture, if any, and sales, if any.

7. Kirby's revenues received from the land and timber sales in question are small in relation to the gross revenues received from its total activities, as appears from the following figures:

|  | 1942 | 1943 |
|---|---|---|
| Total Revenues | $6,447,851.76 | 6,957,262.23 |
| Total Costs and Expenses | 5,890,535.68 | 6,131,740.38 |
| Standing Timber Sales | 144,607.78 | 113,140.08 |
| ·Land Sales | 24,303.08 | 14,002.90 |

More than a third of the gross, and about one-half of the net income in issue for 1942 comes from sales of standing timber for poles and piling. Approximately the same relation exists in 1943. There were no pole and piling timber sales prior to 1942. The 1942 sales were in two transactions only, were from timber that had been held for many years, principally since 1902, and were made to competitors under pressures originating with the Government. Poles and piling, being necessarily from large and choice trees, trees sold for their manufacture were selected trees taken from wide expanses of forest; and care was exercised to see that the purchasers, in their removal, did not do any damage to the forest. The purchaser in each instance cut and removed the trees, paying plaintiff for them. The two pole and piling transactions partially accounted for in 1942 carried over into 1943; and there was one other in the latter year. Remarks made concerning the 1942 transactions are pertinent to 1943.

The larger timber and timber land sales of 1942 and 1943, like the post and piling timber sales, resulted from Government pressure. Additionally, there were miscellaneous timber sales in 1942 and 1943 in the nature of recoveries from depredators and persons mistakingly cutting beyond Kirby's lines, also timber sales representing payment for cutting by Oil Companies, Electric Companies, and other companies, of timber from rights-of-way and roads. There were in 1942 land sales of three acres, 16.40 acres, and two 1-acre tracts, all from timber reserves, made as accommodations to persons wishing homesites. One acre was sold upon request of the Texas Forest Service for a Forester's home; 233 acres was sold to the United States Government for a camp site. The 1943 sales included recovery by suit for an unauthorized cutting by the Hillister Lumber Company, value of timbers cleared from rights-of-way of a power line after condemnation suit was filed, and amounts received as a result of miscellaneous depredations and rights-of-way cuttings. 8.3 acres was conveyed to an Oil Company for a camp, and 3 acres was sold to accommodate a man needing a homesite.

8. Plaintiff made payment to Frank Scofield as Collector as aforesaid of said sums demanded on July 7, 1947, namely, Sixteen Thousand Six Hundred Thirty-Nine Dollars and Twelve Cents ($16,639.-12) and Twelve Thousand Seven Hundred Seventy-Seven Dollars and Eighty-Six Cents ($12,777.86) and interest thereon in the sums of Four Thousand Three Hundred Seven Dollars and Ninety-Two Cents ($4,307.92) and Two Thousand Five Hundred Forty-One Dollars and Fifty-Six Cents ($2,541.56) respectively, a total of Thirty Six Thousand Two Hundred Sixty-Six Dollars and Forty-Six Cents ($36,266.-46) paid by reason of the deficiency assessments herein involved. At such time Plaintiff gave notice of protest and that suit for recovery of the monies, so exacted of plaintiff and paid by it, would be instituted.

9. On December 26, 1947, plaintiff filed claims with the Commissioner of Internal Revenue praying for refund of the sums so collected from plaintiff, with interest, using for the purpose the form prescribed for such claims by such Commissioner, and in all respects complying with governing law and regulations. Said claims were, on August 12, 1948, rejected by the said Commissioner of Internal Revenue.

### Conclusions of Law

1. This Court has jurisdiction of this proceeding under Title 28, U.S.C.A., §§ 1340, 1331 and 1332.

2. The property here in question, sold by Kirby in 1942 and 1943, was property used in its trade or business, in part of a character which is subject to allowance for depreciation provided in Section 23(l) of the Internal Revenue Code, 26 U.S.C.A. § 23(l) held for more than six (6) months, and in part real property used in the trade or business, held for more than six (6) months by said Company, and all not (A) property of a kind which would properly be includable in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of Kirby's trade or business.

3. Plaintiff is entitled to recover from defendant the sum of Thirty-Six Thousand Two Hundred Sixty-Six Dollars and Forty-Six Cents ($36,266.46) with interest thereon at 6% per annum from July 7, 1947, until paid and the judgment to be entered herein shall so provide.