GLAE C. and EVELYN GOULD *v.*
DEPARTMENT OF REVENUE

Paul L. Roess, McKeown, Newhouse & Johansen, Coos Bay, represented plaintiffs.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered December 29, 1971.

CARLISLE B. ROBERTS, Judge.

The plaintiffs appeal from the Department of Revenue's Opinion and Order No. I-71-2 which held that, for income tax purposes, the sale of certain timber properties in the first half of the year 1965 was in the ordinary course of plaintiffs' trade or business or, in the alternative, was property used in plaintiffs' trade or business, and that the gain from the sale was taxable as ordinary income. Plaintiffs pray that this court set aside the department's order and give them favorable capital gains treatment on the sales on the ground that the subject properties were capital assets

as defined in ORS 316.408 (1963 Replacement Part) which was then in effect. (This statute was superseded by ORS 316.405 as to sales occurring on and after July 1, 1965.)

In April 1965, plaintiffs sold all of the merchantable timber upon the real property described as the SE¼ of the SE¼ of Section 9, Twp 24 S, Range 11 W, WM, Coos County, Oregon, to Coos Head Timber Company. Plaintiffs had acquired the subject timber (hereinafter designated the "Coos Head" tract) in January 1949. And in May 1965, plaintiffs also sold real property and the timber thereon described as the NW¼ of the SW¼ of Sec 24, Twp 24 S, Range 11 W, WM, Coos County, Oregon, to Moore Mill and Lumber Company. This tract (hereinafter designated the "Moore Mill" tract) had been purchased in May 1951.

The court finds that the plaintiffs owned and actively operated a sawmill and sold lumber wholesale from 1946 to April 1963, cutting from their timber holdings to provide the necessary logs. During the period of time mentioned, all timber logged by plaintiffs from their "tree farm" (that portion of the total acreage of timberlands owned by plaintiffs which was currently used and cultivated for logging) was cut into lumber and sold as such except a de minimis amount of logs that were too large for plaintiffs' mill; however, plaintiffs eventually purchased a log splitter that enabled them to mill all of their logs.

In 1963, plaintiffs decided to develop a rock quarry on their property in the vicinity of the sawmill which made necessary the filling of the millpond with the overburden on the quarry site. Thus, they terminated their sawmilling business in April 1963 and commenced removing the trees and overburden on the rock site. To generate income for investment in clearing

and developing the quarry site, they logged and sold timber from various sections of their timber holdings. Some of the logging was done in conjunction with the quarry construction. Timbers were milled one day in 1964 for a bridge necessary to the new undertaking. In 1964, logs were removed from a right-of-way extending from the millsite to the Allegany Road, over Secs 26 and 25, Twp 24 S, R 12 W, and Sec 30, Twp 24 S, R 11 W, which the plaintiffs expected to market, but which were claimed by Weyerhaeuser and the U. S. Forest Service. (This road was instigated for purposes of the quarry but was justified by plaintiffs, in part, as an outlet from the area for logs belonging to others as well as their own (Defendant's Exhibit A).) Cutting permits were obtained February 7, 1964, for clearing the millsite area of brush and alder and for logging in section 27, east of the millsite. In 1964, the plaintiffs "punched a road" into the "Moore Mill" tract, preparatory to logging it and, prior to May 17, 1965, sold logs therefrom to Moore Mill. On April 17, 1965, plaintiffs sold all the merchantable timber on the "Coos Head" tract to Coos Head Timber Company, retaining all other interests in the property. On April 20, 1965, the plaintiffs obtained a cutting permit to log in Sec 10, Twp 24 S, R 12 W, adjacent to the "Coos Head" tract. On May 17, 1965, they sold the land and remaining timber of the subject property, the "Moore Mill" tract, to Moore Mill. Prior to closing their mill in 1963, the plaintiffs had logged about two million board feet for the use of the mill; in 1965, they logged approximately one million board feet to be sold as logs to others. No logging was ever done on the "Coos Head" tract by the plaintiffs. Before 1965, they had not cut timber from either the "Coos Head" or "Moore Mill" tracts.

On September 19, 1964, Mr. Gould wrote to the

State Industrial Accident Commission, indicating that he was then and in the future would be harvesting timber crops. In his personal income tax return for 1965 he stated his occupation for that year to be "logging and milling." Actual rock production and sale from the quarry did not begin until sometime in 1966.

Mr. Gould testified that neither the "Moore Mill" tract nor the "Coos Head" tract was ever regarded by him as a part of the plaintiffs' "tree farm" from which the mill had been supplied. The plaintiffs' sawmill site was located some 27 to 28 miles by road from the subject properties. All that had ever been done to them up to 1963 was to run a survey line.

Plaintiffs claim that these "reserves" (the subject timber and timberlands) were "investments" and did not constitute property held primarily for sale to customers in the ordinary course of their business nor property used in their trade or business at the time of the 1965 sale; moreover, they contend that their sawmilling and timber business had terminated in 1963 and since that time they were in the rock quarry business. The defendant's principal contention is that plaintiffs were in the "timber" business in 1965 and that the subject property and timber were used in plaintiffs' trade or business.

The court finds the plaintiffs did terminate their wholesaling of lumber in 1963, but, with some interruption, continued to be engaged in the business of logging and were engaged in logging in 1965. The 1965 harvest of a million board feet (50 percent of their prior operation) is too large to be dismissed as irrelevant. Note must also be taken of the plaintiffs' continued possession of the bulk of their substantial timber holdings during that period. Their sole source

of income after 1963 was the sale of logs and one sale of timberland.

Having established plaintiffs' business activity as of the time of the sales in question, the court must resolve the question of whether a logger, selling logs, should receive capital gains treatment in 1965 for gain realized on the sale of specific timber and timberlands under the then applicable Oregon law with respect to the subject properties. ORS 316.408 defined capital assets as "* * * property held by the taxpayer (whether or not connected with his trade or business)," but excluding:

"(1) Stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the tax year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

"(2) Property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in ORS 316.335, *or real property used in his trade or business. * * *"* (Emphasis supplied.)

This Oregon statute is similar to the Int Rev Code of 1954, § 1221; however, it must be noted that federal law (Int Rev Code of 1954, § 1231) provides favorable capital gains treatment for property "used in a trade or business" under certain circumstances. Oregon had no provision such as § 1231 prior to July 1, 1965, and it had no special statute relating to timber sales similar to Int Rev Code of 1954, § 631. Throughout the trial, the plaintiffs sought to make their case by proving the inapplicability of the clause "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business," overlooking

the "real property used in his trade or business" clause and the size of the logging operation.

The court concurs with plaintiffs' contention that they were not holding timber and timberlands as stock in trade or for sale in the ordinary course of business. (ORS 316.408 (1).) The plaintiffs' original business was that of acquiring timberlands and standing timber for the purpose of cutting the timber or having it cut for use in their mill, as distinguished from primarily acquiring such timberlands for future resale to customers in the ordinary course of a trade or business. *Broadhead,* 25 CCH Tax Ct Mem 133, 159 (1966), *aff'd* 391 F2d 841 (5th Cir 1968), 21 AFTR2d 851, 68-1 USTC ¶ 9249. Compare *Kirby Lbr. Corp. v. Scofield,* 89 F Supp 102 (WD Texas 1950), 50-1 USTC ¶ 9176, and *Carroll v. Commissioner,* 70 F2d 806 (5th Cir 1934), 14 AFTR 199, 4 USTC ¶ 1275. See also *Malat v. Riddell,* 383 US 569, 86 S Ct 1030, 16 L Ed2d 102, 17 AFTR2d 604, 66-1 USTC ¶ 9317 (1966).

However, we find that the "Moore Mill" tract was used in the plaintiffs' trade or business of logging prior to its sale on May 17, 1965. ORS 316.408 (2) is plainly worded to except from capital gains treatment all real property *used* in a trade or business, following the exact language of the federal statute for this purpose. Where an Oregon statute has been copied verbatim from a federal law, it is a general rule that the Oregon court will adopt the interpretation given the federal act by the federal courts. *Pac. Supply Coop. v. State Tax Com.,* 224 Or 556, 560, 356 P2d 939 (1960).

3B Mertens, *Law of Federal Income Taxation,* § 22.17, discussing the federal statutory language, "real property used in his trade or business," states:

"* * * The phrase 'used in the trade or bus-

iness' means property that is 'devoted to the trade or business' and includes property purchased with a view to its future use in the business even though this purpose is later thwarted by circumstances beyond the taxpayer's control. [Citing *Spindler,* 22 CCH Tax Ct Mem 1011 (1963); see also *Alamo Broadcasting Co.,* 15 TC 534 (1950).] * * *"

Accepting the plaintiffs' argument that the salvage of property upon discontinuance of a business does not change its status from capital to inventory, it must also be recognized that it does not change its newly acquired status as real property used in the trade or business as a source of supply for cutting and selling logs. *Kruse,* 29 TC 463 (1957), and cases cited therein.

■ The activity of the plaintiffs on the "Moore Mill" tract clearly comes within the word "used"; the status of the "Coos Head" tract is more difficult. The testimony of the plaintiff Glae Gould was that the property had never been part of the "tree farm," serving the mill, because it was remote from the mill, with a mountain in between. However, while it appears to have been held in reserve during the sawmilling phase of plaintiffs' business, it must be observed that plaintiffs' timberlands which constituted both actively operated and inactive parcels for sawmilling purposes can all be regarded as potentially active parcels for logging purposes. Indeed, the plaintiffs obtained a cutting permit on April 20, 1965, for timber immediately adjacent to the "Coos Head" tract, and the "Coos Head" tract was already served by a road. There was no testimony which indicated an intended category of segregation or nonuse of that property, differing from those other tracts which were logged or being held for logging after 1963. It constituted a source of readily available standing timber for their

logging business. Mr. Gould often repeated that his was a "tree farm" enterprise; if the need for immediate cash for development of their second business had not required it, they would still own the subject tracts. The quarry required the abandonment of the mill but not the land and logs.

The Department of Revenue's order is sustained, with additional interest added to the income tax payable pursuant to statute.