Argued July 13, reversed and remanded October 24, 1922.

## SHEEHAN v. McKINSTRY ET AL.

(210 Pac. 167.)

**Vendor and Purchaser—Performance of Agreement to Furnish Abstract of Title, Showing Good Title, Condition Precedent to Vendor's Demand for Payment.**

1. An agreement by the vendor under an executory contract for the sale of land to furnish an abstract of title showing good title in himself is an essential part of the contract, and the furnishing of such an abstract is a condition precedent to the vendor's right to demand payment.

**Vendor and Purchaser—Vendee Entitled to Equitable Lien Where Vendor in Default.**

2. Generally a purchaser is entitled to an equitable lien on the land for the amount paid on the price if the contract fails because of vendor's default.

**Vendor and Purchaser — Evidence Held to Show That Purchaser Accepted Abstract as Sufficient.**

3. In an action to foreclose land contract, evidence *held* to show that defendant purchaser accepted the abstract tendered by vendor, although it was not brought down to date of the contract, as a sufficient performance by plaintiff of his undertaking to furnish an abstract.

**Vendor and Purchaser—Objections to Title must be Specific—"Abstract of Title."**

4. Objections to title as defective, or objections to the abstract as suspicious or defective, must be specific, an "abstract of title" being not the complete evidence of the title, but a synopsis of the data as to the title, or a memorandum or concise statement of the

conveyances and encumbrances which appear on the public records affecting the title.

**Vendor and Purchaser—Purchaser, Remaining in Possession After Being in Default, cannot Complain of Defective Title.**

5. A purchaser, who has remained in possession of the purchased premises after being in default and after tender by vendor of insufficient abstract, cannot complain of insufficiency of the abstract.

**Vendor and Purchaser—Vendor of Real Property upon Default may Elect Foreclosure by Judicial Sale or Strict Foreclosure.**

6. Under an executory contract for the sale of land, where the vendee is in default because of his failure to make his payments, the vendor is not bound by Section 422, Or. L., to seek a foreclosure by judicial sale, but may, where it is not inequitable, demand a strict foreclosure, since his interest is not strictly a lien within that statute but an equitable right to compel vendee to make payment within a specified time, or be barred from all rights under the contractor.

**Vendor and Purchaser—Strict Foreclosure Held Warranted.**

7. Under an executory contract for the purchase of real property at the price of $18,500, where the vendee, after paying $6,000 on the principal and $2,460 interest, becomes in default on two annual installments of $2,000 each, and neglects to pay the taxes, *held* that, in the absence of any showing that it would be inequitable the vendor was entitled to a strict foreclosure.

**Mortgages — Foreclosure by Default of an Executory Contract Defeats Mortgage of the Vendee's Interest.**

8. A vendee's partial performance of an executory contract for the purchase of real property gives him an interest which is mortgageable, but the enforcement of such mortgage as a lien upon the land is dependent upon the condition that the contract be kept in force by the subsequent performance of its terms, and a default by the purchaser defeats his mortgagee's security.

From Josephine: F. M. CALKINS, Judge.

Department 1.

This suit was brought to obtain a strict foreclosure of the equitable estate of the defendant McKinstry in certain real property in Josephine County, Oregon, the legal title to which is in the plaintiff, and to set aside and cancel a mortgage thereon, given by McKinstry to the defendant bank to secure the payment of a promissory note executed by McKinstry and wife to the defendant Donnell, as trustee. The equitable estate was acquired under a written contract

entered into on March 30, 1912, between plaintiff, the owner of the land, and McKinstry, who contracted to purchase the same. By this contract the plaintiff agreed to sell and convey and McKinstry agreed to buy and pay the sum of $18,500 for the property. The contract recites that $4,000 of said purchase price was paid upon the execution of the contract. It provides that the balance shall be paid in stated installments, the last one falling due on August 20, 1920, and that the installments shall, until paid, bear interest at the rate of 6 per cent per annum from August 20, 1911. By the terms of the contract it is provided that McKinstry shall have possession of the land, and while in such possession shall pay the taxes thereon. McKinstry took immediate possession of the property and remained in possession until after January 27, 1917, when this suit was commenced. The contract required, and pursuant to its terms, the plaintiff did, jointly with his wife, make and execute a good and sufficient deed, with full covenants of warranty, conveying the premises to McKinstry, and deliver it to the defendant bank in escrow, together with a copy of the contract, with instructions to the bank to deliver the deed to McKinstry upon his performance of the conditions and payment of the stipulated installments provided for by said contract. The contract also provided that the plaintiff should furnish to McKinstry "an abstract of title to said described premises showing good and sufficient title, free and clear of all liens and encumbrances to the date of this agreement." Under said contract McKinstry paid $6,000 upon the principal sum, and $2,460 interest. At McKinstry's request, the plaintiff conveyed one acre of said land to a third party and credited McKinstry's interest account with $100, the amount received therefor.

At the time this suit was commenced McKinstry was in default in the payment of interest and had failed to pay two of the stipulated installments, one for $2,000, payable on or before August 20, 1915, and one for $2,000, payable on or before August 20, 1916. He was also in default in not having paid, as required by the contract, the taxes for the year 1915, amounting to $170.88, nor has he paid the taxes for 1916, amounting to $194.98. On January 2, 1914, McKinstry mortgaged his interest in the land to the defendant bank to secure a note given to defendant Donnell, as trustee.

In his answer McKinstry alleges that the plaintiff himself is in default in not having performed the terms and conditions of the contract and seeks to recover from the plaintiff the amounts paid by him under the contract. The other defendants answered jointly, alleging the execution and delivery of said mortgage by McKinstry, and prayed for the foreclosure thereof, that the amount due thereon be declared to be a lien against said property and the property be sold in satisfaction thereof, and that in case McKinstry should recover from plaintiff, that the lien of the mortgage attach to the moneys so recovered, and that said money be applied in satisfaction of the mortgage. Upon the trial the court below refused to grant relief to either party and dismissed the suit. The plaintiff appeals.

REVERSED AND REMANDED.

For appellant there was a brief and oral argument by *Mr. V. A. C. Ahlf.*

For respondents there was a brief and oral arguments by *Mr. H. D. Norton.*

RAND, J.—The first matter affirmatively alleged in McKinstry's separate answer is that the plaintiff granted an extension of time to pay the stipulated installments under a provision in the contract which provides that "in the event of financial depression, panic or reverse circumstances," making it impossible for McKinstry to make any of the payments stipulated, the plaintiff shall, upon request, grant an extension of one year within which such payments may be made. No testimony was offered, either to support or contradict this contention. In the state of the record, the original pleadings not being before us, it is impossible to determine whether this allegation is admitted or denied by the reply. The printed abstract of record shows an admission in the reply of matters alleged in certain numbered lines of the answer, but fails to show what was alleged on said lines. But assuming that such extension of time was granted as contended for, it can be of no avail to the defendant for the reason that it is alleged in the complaint and admitted by the answer that the installment for $2,000, which became due, under the terms of the contract, on August 20, 1915, has not been paid; so, if an extension of the time in which to make the payment was granted as contended for the payment would fall due on August 20, 1916, and as the suit was not commenced until January 27, 1917, the defendant was in default at the commencement of the suit, whether such extension was made or not. He was also in default in not having paid the 1915 tax, as he had agreed to do.

1. The defendant McKinstry alleges that the plaintiff failed to furnish him with an abstract as provided for under the contract, and because of such alleged failure he seeks to recover the money paid to

plaintiff under said contract. By the terms of the contract plaintiff was required to furnish an abstract showing a merchantable title to the premises in himself on the day the contract was entered into. The furnishing of such an abstract was, therefore, one of the terms of the contract, the observance of which was as essential as that of any other term or condition by him stipulated to be performed: *Decker* v. *Jordan,* 79 Or. 109, 113 (154 Pac. 431).

2. And if the plaintiff failed to perform this condition of his contract the defendant is entitled to the relief demanded because the furnishing of an abstract showing a merchantable title, unless waived by the defendant, is a condition precedent to plaintiff's right to demand payment under the contract, and "as a general rule a purchaser of land by executory contract is entitled to an equitable lien thereon for the amount paid upon the purchase price if the contract fails because of some act or conduct of the vendor or his inability to perform it": 27 R. C. L., p. 628, § 385. Substantial performance of an executory contract for the sale of realty does not exist if there is a defect in the title, either as to the holder or as to any substantial or material part of the realty agreed upon; nor is the contract substantially performed if the performance tendered is substantially or materially different from that provided for by the terms of the contract. And if the part of the realty to which title fails is a material part of the subject matter for which the purchaser has stipulated, the purchaser may, if he wishes, treat such failure of the title as a discharge of the entire contract: 5 Page on Contracts (2 ed.), § 2790. In a case where the question of an abstract was not involved, this court said, in *Collins* v. *Delashmutt,* 6 Or. 51:

"It is now a settled principle of law governing all executory contracts for the sale of real property, that there is an implied warranty on the part of the vendor that he will convey a good title. A contract to make a good and sufficient deed is not satisfied by the execution of a merely formal conveyance, which, on account of defects in the vendor's title, fails to pass a good title to the vendee. * * No purchaser should be compelled to take a defective or encumbered title. It would be unjust to require him to take a bad title and to remit him to the doubtful chances of an action on the covenants in his deed, with the risk of the possible insolvency of his vendor."

3. It appears from the testimony offered by the defendant McKinstry that an abstract of title to the premises involved was prepared and was in the possession of McKinstry. He produced this abstract, and from the certificate attached thereto, it appears that it only refers to instruments recorded prior to the twenty-eighth day of September, 1911, while the date of the contract is March 30, 1912. He also testified that he informed plaintiff on several occasions that the abstract did not disclose good title to the premises in plaintiff, and that he demanded that an additional abstract showing good title should be furnished him. It appears from the testimony offered by the plaintiff and by plaintiff's wife that at the time the contract was entered into McKinstry was engaged in the real estate business and that he prepared or attended to the preparation of abstracts of title to properties with which he was dealing. They also testified that McKinstry volunteered to and did attend to the preparation of the abstract offered in evidence and that McKinstry had refused to sign or enter into the contract until after he had had the abstract in question prepared, and had submitted it to an attorney for examination. Plaintiff and his

wife also testified that when the abstract was so sub-
mitted by McKinstry to his attorney, the attorney
advised him that the abstract disclosed certain irregu-
larities which would necessitate obtaining affidavits,
the correction of defective records of satisfaction of
mortgages and the commencement of a suit to quiet
title to part of the premises, and that acting upon
such advice a suit to quiet title upon the request of
McKinstry was commenced in the name of the plain-
tiff and prosecuted to a final decree, and the other
steps suggested were taken, and that after this had
occurred McKinstry informed the plaintiff that plain-
tiff's title to the premises was satisfactory. They
further testified that McKinstry never subsequently
made any objection thereto or request that plaintiff
furnish any further or additional abstract. While
this testimony is contradicted by McKinstry, Fred A.
Williams, the attorney above referred to, testified
positively that he examined the abstract in question,
advised the taking of the steps above stated, that
these steps were taken pursuant to his advice and
that he then advised McKinstry that the irregular-
ities and defects disclosed by the abstract had been
cured and that the plaintiff had a good marketable
title to the premises. From this evidence we find
that McKinstry accepted the abstract, although not
brought down to the date of the contract, as a suffi-
cient performance by plaintiff of his undertaking to
furnish an abstract, and that he never at any time
demanded or requested the plaintiff to furnish any
further or additional abstract.

4. In this connection it is significant that although
McKinstry testified that plaintiff's title to the prem-
ises is defective, he fails to allege or prove in what
respect or to what part of the premises the title is

defective, or that there is any lien or encumbrance on the land. In *Cunningham* v. *Friendly*, 70 Or. 222, 230 (140 Pac. 989), this court held that: "If there be defects in the title, they must be made specific issues and tried by the court; and if plaintiff objects to the abstracts as suspicious or defective, he must allege what is defective and in what respects. * * A complete abstract of title does not mean the complete evidence of the title, but a synopsis of the data as to the title." Or, as said in 1 Cyc. 213: "An abstract of title is a memorandum or concise statement of the conveyances and encumbrances which appear on the public records affecting the title to real property."

5. But regardless of these considerations, the undisputed facts show that McKinstry was let into the possession of the property at the time the contract was entered into and that he remained in possession thereof after being in default, and until after the commencement of this suit. He is not, therefore, in position to complain. If a contract for the sale of realty is executory on both sides, failure of title is failure of consideration for which the purchaser may avoid the contract, and because of such failure of title, he may recover the purchase money which he has paid to the vendor in performance of the contract, but before he can do this he must first surrender the possession to the vendor if he has taken possession under the contract: 5 Page on Contracts (2 ed), § 2980. If the vendee under an executory contract for the sale of realty "would rescind the contract of purchase on account of a defect in the title, or for any other breach of the agreement, he must restore the possession and the estate to the vendor." *Sayre* v. *Mohney*, 30 Or. 238, 241 (147 Pac. 197). In the latter case the reason assigned for the

105 Or.—31

rule is "that the purchaser, by accepting an estate and retaining possession thereof, is estopped from denying the title under which he holds." Another reason for the rule is given in 2 Williston on Contracts, Section 687, as follows: "The principle of election precludes a purchaser in possession of real estate under a contract from refusing to make payment under the contract or dispute his vendor's title so long as he retains possession of the property; for the possession can only rightfully be held under the contract, and therefore, while he retains possession, the purchaser necessarily elects to continue the contract." "The purchaser cannot claim right to possession and at the same time deny the obligation to perform the terms." *Mitchell* v. *Hughes,* 80 Or. 574, 583 (157 Pac. 965). Both the plaintiff and the defendant were required to perform the terms of their contract. So long as the defendant made the payments required by the terms of his contract and complied with its provisions, he was authorized to remain in possession of the property and he had a right to rely upon performance by plaintiff of all of plaintiff's obligations under the contract. If defendant had made payments and complied with such provisions, he would not have waived his right to insist upon performance by plaintiff; but after he had knowledge of plaintiff's failure to perform, before he could avail himself of such failure, he must either perform the contract upon his part and insist upon plaintiff's performance or refrain from accepting any further advantages or benefits flowing from the contract; for, by accepting such benefits he necessarily continued the contract in force and kept alive his obligation to perform. He could not remain in possession, and at the same time refuse to be bound by its terms.

"The principle," says Mr. Williston, "is general that wherever a contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform unless the right to retain the excuse is not only asserted but assented to." 2 Williston on Contracts, § 688. For this reason, if the plaintiff tendered an abstract which did not conform to the requirements of the contract and refused to furnish one that did, then unless the defendant intended to stand upon the contract and to insist upon the plaintiff's performance of it, the defendant, as a matter of law, was bound to surrender possession of the property and refrain from accepting any further benefits flowing from the contract.

6. The only remaining question necessary for decision is, Is the plaintiff entitled to the relief of a strict foreclosure? Upon McKinstry's failure to pay the stipulated installments, plaintiff was entitled to recover the amount due by an action at law. Whether such remedy would be adequate or not would depend upon the solvency of McKinstry, but whether adequate or not, the plaintiff was entitled, under the law, to elect whether to pursue his legal or his equitable remedy. Under an executory contract for the sale of realty, equity regards the real beneficial and equitable ownership of the land as vested in the vendee, the vendor merely holding the legal title as security for the purchase price. Under such a contract a vendor, in this state, is not required to obtain a foreclosure by judicial sale of the vendee's equitable ownership in order to satisfy his claim for the unpaid purchase price. In a case where the contract for the sale of realty is executory on both sides,

and the vendee is in default because of his failure to make the payments required by the contract, and suit for strict foreclosure is brought by the vendor, the provisions of Section 422, Or. L., relating to the foreclosure of mortgages and other liens is not applicable. It was held in *Savings Co.* v. *Mackenzie,* 33 Or. 209, 213 (52 Pac. 1046), that Section 414, Hill's Code, now Section 422, Or. L., "has reference to the foreclosure of liens for the security of some debt, while the vendor's so-called 'lien' under a contract for the sale of land is not strictly a lien at all, but merely an equitable right 'to compel the vendee to make payment of the purchase money within a specified time, or else be barred of all right under the contract': 3 Pom. Eq. Jur., § 1262." See also *Flanagan Estate* v. *Great Cent. Land Co.,* 45 Or. 335, 342 (77 Pac. 485).

7. This case, therefore, presents a controversy not affected by statute, but is one that is controlled entirely by equitable principles. Under those principles as recognized and adopted by the decisions of the courts of this and other states where a contract for the sale of realty is executory on both sides and the vendee has failed to make the payments required under the contract, the vendor, in case such relief is not inequitable, is entitled to a decree fixing a reasonable time in which the vendee will be required to pay the purchase price, and upon his failure to pay such price within the time limited, the vendee, without judicial sale, will be barred and foreclosed of his equitable estate in said property, whereupon the contract will be canceled and the vendee's rights thereunder will be terminated. If, however, the vendee has paid a considerable portion of the purchase price or if the property has largely enhanced in value, or if, for any other reason, it would be inequitable to grant a strict

foreclosure, it is within the inherent powers of a court of chancery, independent of statute, to decree that the property be sold by judicial sale, and that the proceeds of such sale, after the purchase price and the expenses of such sale have been paid, be paid over to the vendee or to those entitled thereto.

8. By defendant's partial compliance with and performance of the terms of the contract an equitable interest or estate in the land had become vested in the defendant and this equitable interest or estate was subject to mortgage by him, but the enforceability of such mortgage, as a lien against the land, depended upon the condition that the contract be kept in force by the subsequent performance of its terms.

Nothing has been alleged or even suggested which makes it inequitable in this case to grant the remedy of strict foreclosure; therefore, under the facts alleged and proved, it was error for the court to refuse plaintiff the remedy of a strict foreclosure. Four months after the entry of a decree in the court below is, under the circumstances of this case, a reasonable time in which the defendants should be required to make payment of the amount due under the contract. Unless the defendants, within the time so limited, shall make such payment, the said contract will be canceled and defendants' rights thereunder will be terminated and said mortgage from McKinstry to the defendant bank will cease to be enforceable as a lien against said property and plaintiff will be restored to his full, legal and equitable ownership of said property. If, within the time limited, the defendants make said payment, then concurrent therewith the plaintiff will be required to deliver to the defendant McKinstry a good and sufficient deed with full covenants of warranty conveying said premises

and the whole thereof to the defendant McKinstry free and clear of all liens and encumbrances created by, through or under the plaintiff.

The decree of the lower court will therefore be reversed and the cause will be remanded with directions to that court to enter a decree in favor of the plaintiff and against the defendants not inconsistent herewith, and it is so ordered.

BURNETT, C. J., and McBRIDE and HARRIS, JJ., concur.