Argued September 18, affirmed October 17, 1951

# HARDER ET UX. *v.* CITY OF SPRINGFIELD ET AL.

236 P. 2d 432

*R. B. Carmichael* and *Marvin O. Sanders,* of Springfield, argued the cause and submitted briefs for appellants.

*William S. Fort,* of Eugene, argued the cause for respondents. On the brief were Husband, Fort & Johnson, of Eugene.

Before HAY, Acting Chief Justice, and LUSK, LATOURETTE, WARNER and TOOZE, Justices.

WARNER, J.

This is a suit for a declaratory judgment. It is brought by the plaintiffs, James Harder and his wife, Ada Harder, who are owners of and residents upon real property situated on North Tenth street in the city of Springfield, Oregon, lying within the boundaries of an area determined to be benefited by a projected paving improvement of that street. The contested improvement was initiated by the Common Council and by it authorized and directed on the 29th day of August, 1949, under its Ordinance No. 986. The defendants are the city of Springfield, a municipal corporation, and its several officers, the mayor, the members of the

council and its city manager. The defendants have appealed from a decree declaring Ordinance No. 986 void and of no effect in so far as it affects the property designated by the Common Council as benefited by the proposed Tenth street improvement; restraining the council from levying or collecting any assessments against said property for said improvement; and determining that certain classes of ownership constitute owners benefited within the meaning of the city charter.

It is the contention of the plaintiffs that a remonstrance, in due and sufficient form, containing more than the legally required number of signatures of "property owners benefited" was seasonably filed with the council; but that body wrongfully rejected certain names in sufficient number to reduce the total number of remonstrators to less than the charter's required number of "two-thirds of the property owners benefitted," and thereafter, without authority, proceeded to direct the improvement of Tenth street.

By reason of the stipulation entered into by the parties before trial, the issues were narrowed; and we are relieved from making any determination of the exact number of "owners benefited" necessary to constitute a legally effective remonstrance against the contemplated improvement. The stipulation, so far as pertinent, provides:

"That none of the vendees in possession under the land sale contracts, as alleged in the pleadings, had recorded said contracts and none of said contracts were of record.

"III

"It is agreed that if the Court finds that vendees in possession under a land sale contract are property owners benefited under the section of the Charter here involved and that their vendors are

not property owners benefited within the meaning of said section, and further finds that husband and wife holding as tenants by the entirety are each a property owner benefited, then the necessary two-thirds of the property owners benefited signed the remonstrance here involved.''

The complaint alleges and the answer of the defendants admits:

"That the names of eighteen (18) persons who signed the Remonstrance were stricken by the Common Council therefrom on the grounds that the eighteen persons were not record owners; that the said eighteen persons were all vendees in possession of the real property under land sale contracts imposing upon them the responsibility of paying for any assessments levied against the property subsequent to the execution of the contract. None of the vendors under the said contracts had signed the Remonstrance Petition.''

During the oral argument counsel for appellants and respondents conceded that if we found that the right to remonstrate reposed in the vendees and not in the vendors, then the remonstrance in question would be signed by two-thirds of the property owners benefited and consideration of the status of owners by the entireties would be unnecessary. It therefore follows that if we find that vendees under a contract to purchase are the ''property owners benefited,'' the decree of the lower court must be affirmed.

Preliminary to further discussion, it is necessary that we know something of the laws of the city of Springfield which gave rise to this litigation.

In 1946, the Common Council by Ordinance No. 869 initiated a charter amendment relating to its powers to make street improvements within the city. The ordi-

nance was referred to the legal voters of the city on November 5, 1946, at which time it received a ratifying majority. The pertinent provisions of Ordinance No. 869, which thus became a part of the charter of the city of Springfield, read:

"Section 11. The method and procedure for determining the amount of the assessments, *the property benefited,* the spread and apportionment of the amount of the assessments, and the boundary and location of the property, lots, district, or area to be assessed; for the making and approval of the plans and specifications; for the notices to *property-owners and other interested parties;* for the hearings, for the composition, organization, and procedure of boards of revision or appraisal, if any; for the levy of the assessments; for the creation of a lien; and for any and all other determinations, steps, measures, resolutions, ordinances, and actions in relation to the assessments shall be governed by either (a) the provisions of the special assessment statutes of the State of Oregon or (b) the provisions of a general ordinance or ordinances setting forth such methods and procedures, which general ordinances may be enacted by the Council and shall be subject to amendment or repeal.

"Section 12. All public improvements shall be made either on the motion of the council or on petition of a majority of *the property owners benefited.* Remonstrance of two-thirds of *the property owners benefited* shall operate to defeat such motion or petition and the same may not again be considered by the council for a period of six months." (Italics ours.)

Acting under the authority of § 11, the Common Council of the city of Springfield adopted Ordinance No. 905, on the 18th day of August, 1947, entitled:

"An ordinance prescribing the method and procedure to be followed in making public improve-

ments and providing for the making of assessments therefor, providing for the enforcement and collection of the said assessments, for the foreclosure of liens created thereby, and declaring an emergency."

The parts of Ordinance No. 905 pertinent to our present interest are:

"Section 1. * * * Whenever the council shall deem it expedient to * * * improve any street or streets, * * * for all or any part of which it is anticipated special assessments will be levied, it shall by resolution declare its intention to initiate such improvement and direct the city engineer to make a survey and plat of such project and to submit a written report. The city engineer shall make such survey, plat and report and file the same with the recorder within the time set forth in such resolution. Such report shall contain a full description of such project and a description of each lot, tract or parcel of land, or portion thereof, specially benefited thereby, with *the name of the record owner or owners and may contain the name or names of other persons found to have any interest in or lien upon said property* * * * .

" * * *

"Section 3. * * * Promptly after the filing of the engineer's report the recorder shall prepare a notice stating that such report is on file in his office subject to examination, giving the date when the same was filed, the estimated probable cost of such proposed improvement, a brief statement of the area proposed to be assessed therefor, and *notifying all persons interested* to present their objections to said report, if any they have, before the common council on a date specified in such notice, not less than 10 days after the date of the first publication or posting, as herein after provided, of said notice.

" * * * If the council shall declare notice be published, the recorder shall prepare the notice of

publication containing the information above set forth, together with *the names of the record owners of the property and a description thereof, either by street number or other legal description and cause the said notice to be published in a newspaper of general circulation* \* \* \* *."* (Italics ours.)

The Common Council, in testing the legal sufficiency of the several signatures to the remonstrance, predicated its determination upon whether or not the signer was a "record owner" of the property which would be benefited (§§ 1 and 3 of Ordinance No. 905). Plaintiffs allege that in so doing the council should have been governed by the broader provisions of the charter as amended by §§ 11 and 12 of Ordinance No. 869 and should have rested its judgment as to the sufficiency of the remonstrance by determining whether the signers of that document were, in fact, "the property owners benefited" by the improvement proposed by Ordinance No. 986, and without regard to the question of recorded ownership.

A city charter constitutes the organic law of a municipality. It must be first consulted to determine the rights, powers and privileges and the limitations of the authority of the city's legislative body. The municipality's action must find its support therein and everything to the contrary must give way to the mandate of that body of the city's organic law, unless the charter itself is in conflict with the constitution of the state. It cannot, by enacting a general ordinance of "methods and procedures" such as Ordinance No. 905, enlarge, restrict or repeal the express substantive provisions of its charter. This proposition is so elementary that no citations of authority are necessary to demonstrate the truth of its assertion.

■■ A charter is a grant of power from the people; and when powers are expressly reserved to the people, as is done by § 12 of the amendment, such a reservation will be strictly construed in favor of the people and against the city. *Allen v. City of Portland,* 35 Or. 420, 428, 58 P. 509.

The Allen case was one challenging the validity of an assessment. There Justice WOLVERTON, speaking for the court, said, at page 428:

"The charter regulations in this respect, as in all others where the property of individuals is to be taken or incumbered without their consent, are to be strictly construed, and every substantial requirement must be complied with before the power of the council thus delegated can be exercised. Without such compliance its jurisdiction to act is absolutely and entirely wanting, and proceedings had and taken would necessarily be void and without effect for any purpose."

■ It will be noted that quantum and quality of the remonstrators to a municipal improvement are found only in § 12 of the amending ordinance and the privilege of remonstrating there limited to two-thirds of "the property owners benefitted," notwithstanding that § 11 provides for notice to a slightly larger group, namely, "to property-owners and other interested parties." Although "other interested parties" may have a right to be heard at any hearing relating to the improvement, the right to block its progress reposes solely in "the property owners benefited" (§ 12, Ordinance No. 869). We shall, therefore, address ourselves to the meaning of those words as they appear in that section. We will hereinafter refer to it only as § 12.

The words, "two-thirds of the property owners benefited," as found in § 12, are plain and unambigu-

ous. Read in the context of their setting, no recourse to rules of construction is necessary to support the conclusion that the ownership referred to is not limited to recorded ownerships.

■ Ownership of real property is not dependent upon a recorded title; and, as we shall later find when we discuss the title of a vendee under a purchase contract, the vendor is not the "property owner benefited." Therefore, when the Common Council of Springfield gratuitously applied its own test of "record" ownership, it necessarily narrowed the privilege of remonstrance and thereby wrongfully denied its use by "owners benefited" but with unrecorded titles. By the same token, it excluded all vendees under executory sale contracts who, notwithstanding, would be the beneficiaries of the improvement and the only parties to such a contract required to bear the cost of the benefit flowing from the improvement made. The Common Council was clearly in error when it substituted and applied such a standard of its own making in lieu of the broader test provided by the charter as amended by § 12.

Having so concluded, we are still met with the question: Are vendees, in possession of real property under land sale contracts imposing upon them the obligation and responsibility of paying for any assessment levied against the property subsequent to the execution of the contract, "property owners benefited" in the sense that those words are employed in § 12?

■ The exact situation is novel in this jurisdiction. The word "owner" standing alone, as applied to land, has no fixed and inflexible meaning which would in and of itself preclude a vendee in possession under a land sale contract from enjoying an effective status as a

remonstrator under the charter provisions herein-above referred to. Indeed, this court has long since held that while the word "owner" usually implies that the estate possessed is an estate in fee simple, it may, nevertheless, include one "who has the usufruct control or occupation of land with a claim of ownership, whether his interest be an absolute fee or a less estate." *Schram v. Manary,* 123 Or. 354, 363, 260 P. 214, 262 P. 263; *Thompson v. Thompson,* 79 Or. 513, 516, 155 P. 1190; *Binhoff v. State,* 49 Or. 419, 421, 90 P. 586.

The Allen case, supra, 35 Or. 420, affords some illustration of the flexibility of the meaning of the word "owner" when used in a matter akin to the one now before us. It sought to restrain the city of Portland from collecting an assessment for a street improvement wherein the plaintiffs rested their cause upon the insufficiency of signatures to the petition for the improvement. The court, in speaking of the signature of one not an owner of record but, in fact, a beneficial owner, said, at page 445:

"Under the law she was possessed of a deter-minable estate, and was intrusted with the sole management of the property, and *we think she was the owner, within the intendment of the charter,* and therefore authorized to sign in that capacity, as representing the lots in question." (Italics ours.)

In 2 Pomeroy, Equity Jurisprudence (5th ed.) 21, § 368, an analysis is made of the nature of the relation-ship between the vendor and the vendee under an executory contract of sale, and we read:

"*The vendee is looked upon and treated as the owner of the land;* an equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years; although the vendor remains owner of the legal

estate, he holds it as a trustee for the vendee, *to whom all the beneficial interest has passed,* having a lien on the land, even if in possession of the vendee, as security for any unpaid portion of the purchase-money. The consequences of this doctrine are all followed out. As the vendee has acquired the full equitable estate,—although still wanting the confirmation of the legal title for purposes of security against third persons,—he may convey or encumber it; may devise it by will; on his death intestate, it descends to his heirs, and not to his administrators; in this country, his wife is entitled to dower in it; a specific performance is, after his death, enforced by his heirs; *in short, all the incidents of a real ownership belong to it.*'' (Italics ours.)

The rule governing rights of the vendee in a matter of this kind is more definitely stated in 48 Am. Jur., Special or Local Assessments, 702, § 162:

''A vendee in possession under a valid contract to purchase has been regarded as the owner for the purpose of remonstrating against a special or local assessment. One having an equitable title to property as a purchaser thereof, who has paid a portion of the purchase price, is the owner thereof within the meaning of a statute providing for the filing of a protest against the letting of a contract for paving by a majority of the resident owners of the property liable to taxation therefor.''

Also see annotations in 2 A.L.R. 790.

■ Our own holding in *Sheenhan v. McKinstry,* 105 Or. 473, 483, 210 P. 167, 34 A.L.R. 1315, is consonant with the tenor of the foregoing authorities. In that case it is said:

''Under an executory contract for the sale of realty, equity regards the *real beneficial and equitable ownership of the land as vested in the vendee,* the vendor merely holding the legal title as security for the purchase price.'' (Italics ours.)

The city has brought to our attention various decisions of this court which they claim are at variance with the concept that vendees are the property owners benefited. Those so referred to by the appellant are *Gabriel Powder & Supply Co. v. Thompson,* 163 Or. 623, 97 P. 2d 182; *Schram v. Manary,* supra; *Herrett v. The Warmsprings Irrigation District,* 86 Or. 343, 358, 168 P. 609; and *Binhoff v. State,* supra. An analysis of these cases so cited will disclose that the definition of "owner" therein given was compelled by the particular language of the statute then under consideration. It must also be remembered that here we are not construing the terms "owner" or "property owner" standing alone but the words, "property owners benefited".

The Gabriel Powder & Supply Co. case involved a construction of the Mechanic's Lien Law. We find nothing therein to even remotely give comfort or support to the city's position in this matter.

The Schram case, like the Gabriel Powder & Supply Co. case, related to the foreclosure of a mechanic's lien. We there said, at page 363: "The meaning of the term 'owner,' as used in the Mechanic's Lien Law, is controlled by the context and purpose of the statute."

The Herrett case cannot be construed as definitive of "property owners benefited". That case arose under the Irrigation District Law. It was a challenge to the sufficiency of a petition for the organization of an irrigation district. The law (see L.O.L., § 6167) required that such a petition be signed by a "majority of *the holders of title to lands susceptible of irrigation* from a common source." (Italics ours.)

The Binhoff case called for the construction of the word "owner" arising under a statute declaring it to be a crime for a person to trespass upon "premises

not his own." In that case this court made declarations adverse to appellant's contention, holding, among other things, that title to the premises trespassed upon need not be in fee simple ownership of the person in possession and that it was sufficient if the person in possession held under a lesser estate, saying: "An owner of a thing is he who has dominion over it including the idea of the right of possession."

If, as we have heretofore said, the vendor merely holds the legal title for the purposes of security (*Sheehan v. McKinstry*, supra), the position of the vendor in his character as a security holder is much like a mortgagee, more particularly, a mortgagee under a purchase price mortgage, in so far as his debtor-vendee is the owner of the beneficial interest in the encumbered property occupied by him. This being true, reason dictates that the position taken by the city is untenable, a conclusion fortified by the Sheehan case (105 Or. 473) where we also hold that the vendee has the "real beneficial interest." If we would apply the rule contended for by the appellants, it would create some striking anomalies. A mortgagor owning property within the improvement area, if his title was recorded, would be treated as an "owner" and endowed with power to petition for or remonstrate against the improvement and notwithstanding that at the time he might be owing to his mortgagee ninety-five per cent of the purchase price; but by the same rule, the city would silence a vendee living in the same area and deny to him any status as either a petitioner or remonstrator, even though he had retired as much as ninety-five per cent of his purchase price indebtedness at the time the street improvement had become a matter for aldermanic consideration.

In the foregoing paragraph, our reference to the relative status of the purchase price debt, as between the mortgagor and vendee, is employed solely to demonstrate and emphasize the absurd conclusions to which the city thesis leads and the obvious inequitable and unjust results it would foster if applied.

■ We cannot subscribe to it and hold that under the charter of the city of Springfield, as amended by its Ordinance No. 869, vendees in possession under a land sale contract are "property owners benefited" and that their respective vendors are not "property owners benefited" within the meaning of § 12 of that amendment.

■ This conclusion compels an affirmation of the decree in so far as it holds that a vendee in possession under a land sale contract which requires such vendee to pay all assessments levied upon the premises subsequent to the execution thereof is a proper party to sign such a remonstrance petition and that the vendor to any such sale contract is not a proper remonstrator; that Ordinance No. 986 of the city of Springfield, in so far as it affects the property designated by the Common Council as benefited by the improvement of Tenth street as set forth in such ordinance, is void and of no effect; and said city is without power to levy any assessment against the property declared to be benefited by the improvement of Tenth street, pursuant to said Ordinance No. 986, and is properly enjoined from levying or collecting any assessments against said property thereunder.

The decree is affirmed.