Argued October 6, affirmed November 9, 1960

PACIFIC SUPPLY COOPERATIVE *v.* STATE
TAX COMMISSION
356 P. 2d 939

*Gerald F. Bartz*, Assistant Attorney General, Salem, argued the cause for appellants. With him on the briefs were Robert Y. Thornton, Attorney General, and Carlisle B. Roberts, Assistant Attorney General, Salem.

*Gerson F. Goldsmith*, Portland, argued the cause for respondent. With him on the briefs were Goldsmith, Siegel & Goldsmith, Portland, and Cameron Sherwood, Walla Walla, Washington.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and King, Justices.

GOODWIN, J.

The Oregon State Tax Commission appeals from a decree of the circuit court which held Pacific Supply Cooperative exempt from corporation excise taxes under ORS 317.080 (9).

Pacific sued for a refund of taxes paid for the years ending June 30, 1954, 1955, 1956, and 1957. The commission filed a demurrer, which was overruled. The commission having declined to plead further, decree was entered for Pacific.

Prior to the tax year ending June 30, 1954, Pacific had done business in Oregon since 1933 as an exempt corporation under tax laws administered by both state and federal authorities. Pacific is a cooperative corporation, the shares of which are owned by 122 local farmers' cooperatives in Oregon, Washington, and Idaho. About one half of the 70,000 farmers who are members of the constituent cooperatives of Pacific reside in Oregon. Pacific purchases petroleum, fertilizer, farm machinery and related products in large quantities for distribution to its member organizations, which in turn sell directly to individual farmers.

It is conceded that Pacific is qualified under § 521, Internal Revenue Code of 1954 and existing federal regulations as an exempt cooperative. Federal exemption was first granted October 4, 1935, and was reconfirmed in December, 1945, after an audit.

Exemption from the state tax was apparently taken for granted until 1958, when the commission notified Pacific of a proposed assessment for the four previous years. After administrative proceedings were concluded in the commission's favor, this appeal was taken to court.

The commission takes the position that Pacific is not a "producer" as that word is employed in the exemption statute:

> "[ORS] 317.080 Exempt Corporations. The following corporations are exempt from the taxes imposed by this chapter:
>
> "* * * * *
>
> "(9) Farmers' and fruit growers' associations, organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the

value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the state of incorporation or eight percent per year, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association. Exemption shall not be denied any such association because there is accumulated and maintained by it a reserve required by state law or a reasonable reserve for any necessary purpose. Such an association may market the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, and may purchase supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchase made for persons who are neither members nor producers does not exceed 15 percent of the value of all its purchases. "* * * * *"

The quoted statute first appears in substantially its present form in Oregon Laws 1939, ch 489, § 5. A similar section of the then current federal Internal Revenue Act (§ 101 (12)) remained substantially unchanged from its original form in the Act of 1921. The Internal Revenue Service for many years prior

to 1935 had granted exemptions to federated cooperatives which otherwise qualified under the statute. 6 Mertens, Law of Federal Income Taxation 148, § 34.38.

■ It is obvious from a comparison of ORS 317.080 (9) with § 521, Internal Revenue Code, 1954, that Oregon has borrowed the wording of the federal act practically verbatim. This court has said that where an Oregon statute has been copied from federal law we will adopt the interpretation given the federal act by the federal courts. *State v. Burke et al*, 126 Or 651, 269 P 869, 270 P 756.

While this court has not had occasion to extend the same effect to the administrative interpretation of a borrowed federal statute, other courts have found administrative interpretation to be instructive in the absence of judicial construction. *Services, Inc. v. Neill*, 73 Idaho 330, 252 P2d 190; *Commonwealth Ins. Co. v. Bd. of Review*, 414 Ill 475, 111 NE2d 345; *American National Ins. Co. v. Keitel*, 353 Mo 1107, 186 SW2d 447; *Industrial Comm. v. Woodlawn Cemetery Asso.*, 232 Wis 527, 287 NW 750.

■ In the absence of judicial construction, administrative construction is informative, and unless clearly at variance with the express terms of the statute, is entitled to respect. The commission agrees with this proposition, but urges that its own administrative construction of ORS 317.080 (9) should be the beneficiary of the rule. We hold that the long history of administrative interpretation of the federal statute prior to its adoption in Oregon justifies an inference that the Oregon legislature intended to give the same statute the same effect in this state as it was then being given by the federal government.

■ It is settled in state and federal jurisprudence that provisions granting tax exemptions are to be

strictly construed. *Commissioner v. Jacobson,* 336 US 28, 93 LEd 477, 69 S Ct 358, 7 ALR2d 857; *United States v. Stewart,* 311 US 60, 85 LEd 40, 61 S Ct 102; 1 Mertens, Law of Federal Income Taxation 14, § 3.07.

The most recent decision of this court which applied the rule of strict but reasonable construction to a tax-exemption statute is *Mult. School of Bible v. Mult. County et al,* 218 Or 19, 343 P2d 893. We adhere to that rule.

The question is not whether to follow strict construction or liberal construction, but whether an express legislative intent to confer a tax advantage upon farmers is to be limited to benefit those farmers who organize one and only one qualified cooperative.

Operating under the rule of strict construction of exemption provisions, the Internal Revenue Service, since the first enactment of the cooperative exemption, has construed the federal act in favor of federated cooperatives of the type involved here. See SM 2288, III-2 Cum Bull 233 and SM 2286, III-2 Cum Bull 236 (1924), where federated supply cooperatives serving citrus-growers' associations were granted exemption.

The commission cites one federal decision which denied exemption. The case concerned a federated consumers' cooperative which did not qualify for exemption in any event. The stockholders included "54 farmers' cooperatives, 5 cooperatives in which a majority of the stockholders were farmers, 2 city consumers' cooperative organizations, 11 city cooperative organizations in which a majority of the members were consumers, 1 cooperative boarding house, 2 cooperative publishing houses, and one cooperative bank.  *  *  *." The tax board held that there was nothing in the record to show that business done with the city consumers' organizations was less than 15 per cent of the total

business done during the tax year, and denied the exemption. *Co-operative Central Exchange v. Commissioner*, 27 BTA 17.

In all of the federal decisions involving cooperatives owned by associations of growers in which exemption has been allowed, a controlling fact is that all the profits earned by the federated cooperative are fed down to the individual-producer members of the constituent cooperatives in the form of patronage dividends. This procedure is conceded to exist in the case at bar.

One of the most complete studies of the federal exemption of cooperatives we have found is contained in *Farmers Cooperative Co. v. Birmingham*, 86 F Supp 201. In that decision, Graven, J., developed the judicial and legislative history of the tax treatment of cooperatives since the first revenue act of 1913. The decision contains a bibliography, and is documented in detail. The authorities cited therein agree that the legislative policy of encouraging savings to farmers through farmers' cooperatives applies with equal force to associations of such cooperatives.

A true cooperative makes no profit. The marketing cooperatives' method of doing business is intended to realize for the producer-members the highest return for their agricultural efforts. In a purchasing cooperative the farmer-members realize a saving in the purchase of supplies, and thereby reduce their costs. Many cooperatives engage in both marketing and purchasing. It is obvious that, by association, two or more farmers' cooperatives can increase their bargaining power and thereby increase the direct benefits to their individual members. The policy of the exemption from income tax is a legislative effort to assist the farmer in realiz-

ing the maximum income. The income is then taxed once, in the farmer's hands.[1]

While the pleadings do not document the proposition, there is general agreement among the authorities that federated marketing and purchasing associations have been an outgrowth of centralization in marketing and distribution elsewhere in the economy. It is reasonable to infer that a small cooperative consisting of a handful of farmers would be unable to realize significant savings in the purchase of supplies. When combined with other cooperatives in a federated organization, bargaining power is substantially increased. See Packel, Law of Cooperatives (3d ed) 27, § 5 (a).

If it is the legislative policy to encourage farmers to combine their bargaining power through cooperatives engaged in buying and in selling, all of the policy reasons which favor tax exemption for the farmer-owned cooperative apply equally in favor of tax exemption for the farmer-owned-cooperative-owned cooperative. Whether such structure is called vertical integration, or economic giantism, is irrelevant so long as the individual farmer is the only beneficiary of the scheme.

■ Nothing expressed or implied in the legislation under study leads us to believe that while the legislature intended to permit a farmer to do business through a tax-exempt cooperative it did not intend to permit him to pyramid his organization for greater efficiency and greater savings. The objective behind the legislation was to confer a benefit upon farmers.[2]

---

[1] A frequently quoted article which discusses the policy in favor of exemption is found in Paul, *The Justifiability of the Policy of Exempting Farmers' Marketing and Purchasing Cooperative Organizations from Federal Income Taxes*, 29 Minn L Rev 343.

[2] The wisdom of the policy is not before the court. In his 1960 budget message, the President of the United States recommended "* * * changes in the tax laws to correct inequities. These include amendments of the laws on taxation of cooperatives * * *." 86th Cong. US Code C & A

The commission has pointed to no legislative or judicial pronouncement in support of its theory that a method of doing business which is tax exempt at one level should be taxable at the next level of organization.

■ We conclude that ORS 317.080 (9) was intended to grant exemption to those farmers' cooperatives which choose to accept the burdens of the statute, and that such tax exemption extends to cooperatives which continue to meet the qualifications although their actual stock ownership is once removed from the individual farmer through a federation of cooperatives. The controlling element is the method of doing business, not the ownership of stock. ORS 317.080 (9) specifically provides that exemption is not denied because a cooperative has capital stock, provided the statutory qualifications are met.

The decree of the circuit court is affirmed, respondent to recover costs.

News 1474 (1960). Roswell Magill, a former undersecretary of the treasury, recently questioned the wisdom of the present federal policy, in *The Exemption of Cooperatives from Income Taxation*, 21 Mont L Rev 155. The same author treated the matter more fully in 1950. Magill and Merrill, *The Taxable Income of Cooperatives*, 49 Mich L Rev 167.

Another writer has said:

"The exemption option is a special privilege extended to the agricultural industry. Most lawyers for farmer cooperatives make no attempt to justify the exemption upon legal grounds. It was granted by Congress because that body concluded that the best interest of the nation demanded that farmers be given this benefit in aid of their production of food for the nation * * *." Rumble, *Cooperatives and Income Taxes*, 13 Law & Contemporary Prob 534, 538.