THE FIRST EVANGELICAL UNITED BRETH-
REN CHURCH, LAWRENCE RICH, EARLE
RIGGS, JOHN BEHRENS, FRED SCHARF,
NICK LERUD, T. JACK KUNDERT AND
WARREN PAHL, AS TRUSTEES *v.* STATE
TAX COMMISSION

Al J. Laue, Salem, tried the case for plaintiff. On the brief were Williams & Skopil and Al J. Laue, Salem.

Gerald F. Bartz, Assistant Attorney General, Salem, tried the case and submitted a brief for defendant.

Decision for defendant rendered April 4, 1963.

PETER M. GUNNAR, Judge.

This suit is brought by the plaintiff to set aside the defendant's Opinion and Order No. VL 62-82 affirming the denial by the Board of Equalization of Marion County of a charitable exemption from ad valorem property taxes for the plaintiff's house of public worship under ORS 307.140.

Both parties acknowledge that the property in question is a house of public worship and is used exclusively for a purpose exempt under ORS 307.140. The facts of the case, as stipulated, were as follows:

At all times during the calendar year 1961 the plaintiff was a duly incorporated, nonprofit, religious congregation devoted to the practice of Christianity. From 1928 until December 14, 1961, the legal title to the church property was held by the trustees named in

the deed of 1928 and their successors, of whom the trustees on January 1, 1961, were the interveners. During this period the entire beneficial interest in the property was in the congregation for whom the trustees held title under the deed of 1928 and the discipline of the church. On December 14, 1961, the property in issue was conveyed to plaintiff corporation.

Without the knowledge of the congregation or the trustees, the corporate mortgagee of the church property paid the taxes assessed against the property for 1961-2 from funds belonging to the incorporated congregation, rendering this a proceeding to obtain a repayment of those taxes.

Following the action of the assessor and the order of the Board of Equalization of Marion County placing the church property on the assessment roll under the names of the trustees, the unincorporated congregation appealed to the defendant commission. After a hearing before a hearing officer, the commission denied the appeal of the congregation on the merits. This suit then was brought by the corporation as the successor in interest to the unincorporated congregation.

## NONJOINDER OF PARTIES

To the original complaint, the commission demurred on the ground of a defect in parties plaintiff, contending that the trustees, who held title to the property on January 1, 1961, were the proper parties plaintiff. This demurrer was overruled because the defect did not appear on the face of the complaint. The defendant then filed a plea in abatement upon the same grounds. Before this plea was heard, the trustees petitioned to intervene in this suit and the petition was granted and the complaint in intervention

filed. Thereupon, the plaintiff and the interveners filed a general demurrer to the defendant's plea in abatement and, upon argument, the demurrer was sustained and the defendant filed its general denial, upon which this cause was tried.

■ The burden of both the demurrer and the plea in abatement filed by the defendant was that there was a nonjoinder of parties plaintiff because the trustees were not parties and the congregation was an unincorporated society and therefore incapable of suit. These facts did not appear by allegation upon the face of the complaint. They were pleaded in the plea in abatement. Upon the filing of the plea, assuming its facts to be correct (the stipulation later proved that they were not correct as to the corporate status of the congregation), the plea might have been allowed.

However, the defect of nonjoinder, if there was one, was cured prior to hearing by the intervention of the trustees. ORS 13.130, 306.545(3). See *Duke v. Franklin,* 177 Or 297, 162 P2d 141 (1945). Since the taxes had been paid, either the trustees or the corporate congregation was entitled to a refund, if the exemption was allowed.

Whether the plea in abatement should have been tried or disposed of upon demurrer, as was done here, is academic. The substance of the defect alleged in the plea no longer existed after the intervention of the trustees. The original complaint, if in fact it was defective, was aided by the complaint in intervention. The affirmative allegations of the plea in abatement, while they applied to the complaint, no longer applied to the cause as a whole and this appeared beyond peradventure from the record. Furthermore, the payment of the taxes required, or at least made advisable,

the retention of both the trustees and the corporate congregation as parties.

■ The right to demur and plead in abatement to a defect of parties plaintiff is recognized so that the defendant cannot be sued twice for the same obligation. *Nordling v. Johnson,* 205 Or 315, 322, 283 P2d 994, 287 P2d 420 (1955). When this defect is cured before the plea is heard, the grounds for the plea are destroyed. To rule otherwise would not follow the practice and procedure of equity as required by ORS 305.425. "Equity seeks justice rather than technicality, truth rather than evasion, common sense rather than quibbling." *State of Oregon v. Dobson,* 195 Or 533, 577, 245 P2d 903 (1952).

Though not raised directly, there is also a question of jurisdiction. The commission contended in argument that the corporate congregation had no standing herein because it was incorporated after the assessment, after the appeal to the commission, and after the payment of the tax. It further contended that the unincorporated congregation could neither sue nor be sued.

The record here discloses that the congregation itself was incorporated. This is not a case of a stranger succeeding to the interests of the unincorporated congregation but rather the beneficiaries of the trust, the congregation, claiming in their corporate form. The beneficial interest in the corporation and the trust is in the same people. The tax payment, if refundable, would go to the same congregation in its corporate form.

■ The commission ruled on the merits of the exemption. If, in fact, the defect was a cognizable one at the commission level, it was waived by the commission

in ruling on the merits. By the time that the commission issued its order on March 28, 1962, the tax had been paid from congregation funds, the beneficiaries in their corporate form had a right to the claim to the refund, and the corporate congregation owned the subject property. There was no change in status of any of the parties which occurred between the commission order and filing of this suit. As the corporate form of the trust beneficiaries the corporate congregation had a right to bring this suit because it was the beneficial payer of the tax and the holder of the property.

■ Furthermore, by granting the petition to intervene, this court was not extending the statutory time for appeal to the only party entitled to do so. This was contended by the defendant in argument but not by properly pleading the statute of limitations. Instead, it was opening a properly brought suit to allow another party to intervene, thereby supplying a missing, necessary party.

## ON THE MERITS

■ The sole issue, decided by the commission in the negative and presented in this court is: Whether or not property which physically complies with ORS 307.140(1) and is used exclusively for the purposes therein set forth is exempt from taxation when legal title is held by trustees and the beneficial use is exclusively in the hands of a religious corporation which by its nature could qualify for exemption under that statute?

It is the opinion of this court that the commission was correct in reaching the negative conclusion.

In well argued briefs, counsel for both parties have cited the court to various Oregon and other au-

thorities supporting their respective sides of the issue. In the main, the plaintiff and the interveners rely upon *Ellsworth College v. Emmett County,* 156 Ia 52, 135 NW 594 (1912); *King County, Washington v. U. S. Shipboard E. F. Corporation,* 282 F 950 (1922); *Harder v. City of Springfield,* 192 Or 676, 236 P2d 432 (1951); *Schram v. Manary,* 123 Or 354, 260 P 214, 262 P 263 (1927); *Thompson v. Thompson,* 79 Or 513, 155 P 1190 (1916); and *Binhoff v. State,* 49 Or 419, 90 P 586 (1907). The defendant relies upon *Nehalem Timber Co. v. Columbia County,* 97 Or 100, 189 P 212, 190 P 318 (1920); *Herrett v. The Warmsprings Irrigation District,* 86 Or 343, 168 P 609 (1917); and similar cases.

Some of these cases deal with the exemption of federal and state properties. Others deal with matters other than taxation. To the extent that they deal with the criteria of charitable exemption, the bulk of them were discussed, sifted, and correlated by Mr. Justice ROSSMAN in his exhaustive treatment of the general subject in *Security Savings & Trust Co. v. Lane County,* 152 Or 108, 53 P2d 33 (1935), cited by the commission.

■ From the mass of superficially conflicting decisions, the Oregon court reached the decision that the courts in reality were applying the same general principle. At page 136, it said:

> "We do not believe that the above reviewed decisions are in serious conflict when the nature of the local statute is considered. All seem to recognize the same general principle of law."

At page 141, Mr. Justice ROSSMAN stated the rules and principles here applicable:

> "* * * Property of charitable, educational and benevolent societies is exempt from taxation if the

local statute so authorizes. The exemption of such institutions is purely statutory and, hence, the provisions of the statute govern the nature and extent of the exemption. If title to the property is not vested in the charity, and if the statute grants exemption only when title is vested in the name of the charity, the property is subject to taxation. But, if the position of the title is immaterial and the nature of the use governs exemption, the property will be held exempt from taxation if it is being devoted to a charitable use, even though the title is vested in some third person, or if the property at the time is in the custody of the executors of the estate of the deceased benefactor."

On the same page he distinguished charity cases from governmental cases, noting that the exemption of the charitable institution is purely statutory, while the exemption of state property is inherent and is limited only by unmistakable constitutional or statutory provisions.

Under the foregoing rules, the first inquiry is whether our statute requires title to be in the charity. The material words of ORS 307.140(1) extend the exemption to "property owned or being purchased by religious organizations" as houses of public worship. Counsel agree that the sole material word is "owned."

■ Since this word "owned" forms a part of an exemption statute, it is to be construed strictly but reasonably. As recently stated succinctly in *Methodist Homes, Inc. v. State Tax Commission,* 226 Or 298, 307, 360 P2d 293 (1961), the rules governing the construction of exemption statutes are as follows:

"1, 2. Taxation is the rule and exemption from taxation is the exception. *Corporation of Sisters of Mercy v. Lane County,* 123 Or 144, 152, 261 P

694; *Benton County v. Allen,* 170 Or 481, 484, 133 P2d 991. Moreover, statutes exempting property are strictly construed and an exemption is denied unless it is so clearly granted as to be free from reasonable doubt. *Behnke-Walker v. Multnomah County,* 173 Or 510, 521, 146 P2d 614; *Methodist Book Concern v. State Tax Commission,* 186 Or 585, 592, 208 P2d 319.

"3. Such statutes will be construed most strongly against those petitioning for the exemption (*Behnke-Walker v. Multnomah County,* supra, at 522; *Hibernian Benevolent Society v. Kelly,* 28 Or 173, 42 P 3); and if an institution is entitled to the privilege of exemption, the property must fall strictly within the statute. *Benton County v. Allen,* supra, at 484. Charities in this state enjoy no inherent right to exemption from taxation and are immune only in so far as they may be specifically exempt by constitutional provision or statutory enactment. *Security Sav. & Trust Co. v. Lane County,* 152 Or 108, 141, 53 P2d 33. Nor is there a presumption of implied exemption in their favor. *Unander v. U. S. National Bank,* 324 Or 144, 355 P2d 729.

"4. Immunity from taxes on the ground of being a public charity is an affirmative defense and the burden of establishing the eleemosynary character of an institution is upon the party asserting it. *Ackerman v. Physicians & Surgeons Hospital,* 207 Or 646, 659, 298 P2d 1026; 14 CJS 551, Charities § 75."

■ The common and ordinary meaning of "owned" is having legal title. *Harder v. City of Springfield, supra,* and the cases therein cited at page 686. While other meanings may be given in various situations, as cited by the plaintiff, these other meanings are not inherent in the word but rather are taken from the context in which the word "owned" is found. *Security Savings & Trust Co. v. Lane County, supra.* Thus,

the next inquiry is whether the context requires another meaning.

This inquiry is not whether another meaning is possible, because such construction would not be strict. It is not whether such other meaning is reasonable, because the reasonableness corollary to the rule of strict construction requires merely that the strict construction be a reasonable one, not that the strict construction encompass all constructions which are reasonable.

Clearly, the construction of "owned" in this statute as referring only to legal title does not appear unreasonable from the language itself. It does not result in an inherent ambiguity, nor does it render impractical the actual, ultimate effect of the language. The only contention available to the plaintiff, and which it makes, is that such construction defeats the legislative intent.

In support of this contention, the plaintiff cites the long legislative history of this general exemption. The import of its brief is that the exemption of houses of public worship is so time-honored and fundamental in our society that the strict construction of "owned" as importing only legal title becomes unreasonable by its result in this case. In other words, the use of the subject premises as a house of public worship is so controlling and so inherently charitable and, therefore, deductible, that the language of title in the statute must be construed so as to protect the exemption of the use.

Such construction ignores both the principle that there is no inherent right to exemption and the principles of construction so carefully reached by Mr. Justice ROSSMAN in *Security Savings & Trust Co. v.*

*Lane County, supra.* Adverting to that opinion again, the rule can be differently stated as permitting the charitable use to be the basis of the exemption only when the exemption statute does not expressly require a title qualification for exemption. ORS 307.140(1) does have an express title requirement that the premises must be "owned" by the charity. "Owned" usually means or imports legal title. Therefore, the application of the principle here is that legal title is required.

■ As a corollary of its position, the plaintiff contends· that, if ownership is a requisite under the principle of *Security Savings Bank & Trust Co. v. Lane County, supra,* then the legislature intended the word "owned" to mean both legal and equitable title. In support of this position, it cites those cases discussed by Mr. Justice ROSSMAN and from which he draws the principle stated above. Certainly, the Iowa case of *Ellsworth College v. Emmett County, supra,* could be so interpreted without violence to these general principles. But this is not strict construction.

■ Furthermore, the very legislative history cited by the plaintiff indicates a contrary legislative intent. Defendant's counsel has cited this court to the long history of administrative construction embodied in its abstracts OF 105-V, 2-26-53; OF 98-V, 3-7-51; and OF 224-V, 2-3-57. While this interpretation is not here controlling, it is of some persuasion in the absence of contrary judicial pronouncements. *Pacific Supply Cooperative v. State Tax Commission,* 224 Or 556, 560, 356 P2d 939 (1960) ; *Keyes v. Chambers,* 209 Or 640, 661, 307 P2d 498 (1957). This administrative interpretation, if known to the legislature prior to amendment of the statute or for a long period without any amendment, is particularly helpful in estab-

lishing legislative intent. *Gouge v. David,* 185 Or 437, 462, 202 P2d 489 (1949); *United States v. Cerecedo Hermanos y Compania,* 209 US 37, 28 S Ct 532, 52 L Ed 821 (1908); *Hahn v. United States,* 107 US 402, 2 S Ct 494, 27 L Ed 527 (1883); 3 Sutherland Statutory Construction 311.

■ The present statute ORS 307.140 was enacted in 1955, without the phrase "or being purchased by." OF 224-V, 2-3-57, substantially on all fours here, was published by the commission in 1957. In 1959, the legislature undertook to amend this section. In the *Minutes of the Senate Committee on Taxation,* 1959 Session, for February 19, 1959, under the caption Senate Bill 240 which enacted the amendment, there is contained the following:

> "Mr. Katz said the bill refers to property taxes. If you own the property it is exempt; if you are buying it you are not exempt. We are merely providing the same benefit will maintain whether you are acquiring it or own it."

While such scanty records should be far from conclusive as to legislative intent in enactment of a statute (see Stringham, "Crystal Gazing, Legislative History in Action," 47 ABAJ 466 (1961)), this particular interpretation is strengthened by being in accord with the administrative interpretation. Furthermore, the enactment of this amendment, Oregon Laws 1959, ch 207, is eloquent interpretation itself. If "owned" included both legal and equitable titles, then the amendment would have been unnecessary. Since it was amended, the legislature must have deemed equitable ownerships to be excluded prior to the amendment. By expressly adding ownership under contract of purchase instead of all equitable ownerships, the legis-

lature expressed its intent to limit exemption to only this type of equitable ownership. *Expressio unius est exclusio alterius.*

The legislative reluctance to open the door to exemption of equities generally has been based upon sound, practical reasons, when the administrative scheme and practice of ad valorem assessment is considered.

■ Permitting the exemption of equity ownerships would cause a tremendous increase in the volume and complexity of the work incumbent upon the already harassed county assessor. It would require him to analyze often complicated legal documents and relationships and to form opinions upon situations which plague even the finest legal minds. For this reason there has grown up the time-honored maxim that ad valorem taxation is only concerned with legal title. *Nehalem Timber Co. v. Columbia County, supra.* Though the legislature has, on occasion, modified this rule, and courts at times have softened its application, it still is the basis of the principles announced by the court in *Security Savings & Trust Co. v. Lane County, supra,* and the foundation of the law of Oregon in this regard.

Finally, the plaintiff has argued that to deny the exemption is contrary to the obvious intention of our legislature since the inception of statehood to exempt from tax all houses of public worship. This is the legislative intent corollary of the argument that use is controlling discussed above. It is argued that the application of strict construction of the statute therefore is unreasonable. The issue put another way is: Whether the strict construction is unreasonable because it denies to a house of public worship an ex-

emption which the legislature so obviously intends it should have.

But it long has been the rule in this state that the burden lies with the institution, here the congregation, to bring itself within the terms of the exemption statute. *Santiam Fish & Game Association v. State Tax Commission,* 229 Or 506, 516, 368 P2d 401 (1962). So to construe a statute as to render the obvious general legislative intent impossible might well be unreasonable, but here this is not the case. All that is required is that the property be in the name of the congregation, which in turn requires the congregation to incorporate as a nonprofit corporation. This congregation already has met this requirement for 1962. It is not such requirement as to defeat the general legislative intent. In fact, as shown above, the legislative intent to require such qualification for exemption is based upon sound public policy. To deny exemptions to obviously exemptible properties because the reasonable statutory qualifications have not been met is not unreasonably strict construction but rather is construction giving effect to an established legislative policy as it is expressed in the statute. To hold otherwise would again be a violation of the general principles of *Security Savings & Trust Co. v. Lane County, supra,* because it would be making the use overcome the title as a prerequisite of exemption in the face of the clear title requirement of ORS 307.140.

In summation, then, the word "owned" in ORS 307.140 refers to the holding of the legal title, which is the usual meaning of the word, the inclusion of a title requirement in our statute makes the meeting of such requirement essential for the allowance of the exemption, such strict construction is not unreason-

able but in fact is based upon sound public policy, and such strict construction does not deny to the instant house of public worship its exemption by creating qualifications which reasonably it cannot meet.

A decree will be entered herein for the defendant and dismissing the suit of the plaintiff and the suit of the interveners. Neither party shall recover its costs.